2017 IL App (1st) 162471

FOURTH DIVISION
June 15, 2017

No. 1-16-2471

| | | |
|---|---|---|
| ILLINOIS COLLABORATION ON YOUTH; ABCOR HOME HEALTH, INC.; ACCESS LIVING OF METROPOLITAN CHICAGO; ADDUS HEALTHCARE, INC.; AIDS FOUNDATION OF CHICAGO; ALTERNATIVES, INC.; ASI, INC.; ASSOCIATION FOR INDIVIDUAL DEVELOPMENT; AUNT MARTHA'S YOUTH SERVICES CENTER; CARITAS FAMILY SOLUTIONS; CARROLL COUNTY HEALTH DEPARTMENT; CENTER ON HALSTED; CENTER FOR HOUSING AND HEALTH; CENTERSTONE; CHADDOCK; CHICAGO COMMONS; CHICAGO HOUSE AND SOCIAL SERVICE AGENCY, CENTER FOR YOUTH AND FAMILY SOLUTIONS; CHILDREN'S HOME AND AID; CHILDRENS' HOME ASSOCIATIOIN OF ILLINOIS; CJE; COMMUNITY YOUTH NETWORK, INC.; CONNECTIONS FOR THE HOMELESS; CUNNINGHAM CHILDREN'S HOME OF UBANA, IL; DU PAGE YOUTH SERVICES COALITION; FAMILY ALLIANCE; FAMILY COUNSELING CENTER, INC.; FAMILY FOCUS; FEATHERFIST; FOX VALLEY OLDER ADULT SERVICES; GAREDA HOME SERVICES; HAVEN YOUTH AND FAMILY SERVICES; HEARTLAND HUMAN CARE SERVICES; HEALTHY FAMILIES CHICAGO; HENRY COUNTY HEALTH DEPARTMENT; HOUSING FORWARD; HOUSING OPPORTUNITIES FOR WOMEN; HUMAN SUPPORT SERVICES; ILLINOIS COALITION AGAINST SEXUAL ASSAULT; ILLINOIS PUBLIC HEALTH ASSOCIATION; INDIAN OAKS ACADEMY; INTERFAITH HOUSING DEVELOPMENT CORPORATION; INSPIRATION CORP.; JEWISH CHILD AND FAMILY SERVICES; JEWISH VOCATIONAL SERVICE AND EMPLOYMENT CENTER; KEMMERER VILLAGE; KNOX COUNTY HEALTH DEPARTMENT; LA CASA NORTE; LESSIE BATES DAVIS NEIGHBORHOOD HOUSE; LUTHERAN CHILD AND FAMILY SERVICES; MEDICAL GEAR, LLC; METROPOLITAN FAMILY SERVICES; MIDWEST YOUTH SERVICES; NEW AGE ELDER CARE; NEW MOMS; NEXUS, INC.; NICASA; NORTH CENTRAL BEHAVIORAL HEALTH SYSTEMS, INC.; OMNI YOUTH SERVICES; ONE HOPE UNITED, CHICAGO; PREVENTION INITIATIVE; THE OUNCE OF PREVENTION FUND; POLISH AMERICAN ASSOCIATION; PROJECT OZ; PUBLIC ACTION TO DELIVER SHELTER; PUERTO RICAN CULTURAL CENTER; RAMP, INC.; RENAISSANCE SOCIAL SERVICES; REVIVE | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Appeal from the Circuit Court of Cook County<br><br><br><br><br><br><br>No. 16 CH 06172<br><br><br><br><br><br><br><br><br><br>Honorable Rodolfo Garcia, Judge Presiding. |

CENTER FOR HOUSING AND HEALING; RIVER TO RIVER )
SENIOR SERVICES; ROCK ISLAND COUNTY HEALTH )
DEPARTMENT;SAN JOSE OBRERO MISSION; SENIOR )
HELPERS; SERIOR SERVICES PLUS INC.; SHELTER, INC.; )
SINNISSIPPI CENTERS; STARK COUNTY HEALTH )
DEPARTMENT; STEPHENSON COUNTY HEALTH )
DEPARTMENT; STEPPING STONES OF ROCKFORD, INC.; )
TASC; TEEN LIVING PROGRAMS; TEEN PARENT )
CONNECTION; THE BABY FOLD; THE BRIDGE YOUTH AND )
FAMILY SERVICES; THE CENTER FOR YOUTH AND FAMILY )
SOLUTIONS; THE FELLOWSHIP HOUSE; THE HARBOUR; THE )
NIGHT MINISTRY; THE RESURRECTION PROJECT; TURNING )
POINT BEHAVIORAL HEALTH CARE CENTER;TREATMENT )
ALTERNATIVES FOR SAFE COMMUNIITES; UNIVERSAL )
FAMILY CONNECTION; UNION COUNTY; UNITY PARENTING )
AND COUNSELING; WESTERN ILLINOIS MANAGED HOME )
SERVICES; THE WHITESIDE COUNTY HEALTH )
DEPARTMENT; YOUTH ADVOCATE PROGRAM; YOUTH )
CROSSROADS; YOUTH OUTREACH SERVICES; and YOUTH )
SERVICE BUREAU OF ILLINOIS VALLEY; )
)
     Plaintiffs, )
)
v. )
)
JAMES DIMAS, in His Official Capacity as Secretary of Human )
Services; JEAN BOHNHOFF, in Her Official Capacity as Acting )
Director of Aging; NIRAV SHAH, in His Official Capacity as Director )
of Public Health; FELICIA NORWOOD, in Her Official Capacity as )
Director of Healthcare and Family Services; JOHN R. BALDWIN, in )
His Official Capacity as Director of Corrections; MICHAEL )
HOFFMAN, in His Official Capacity as Acting Director of Central )
Management Services; AUDRA HAMERNIK, in Her Official Capacity )
as Director Of The Illinois Housing Development Authority; LESLIE )
GEISSNER MUNGER, in Her Official Capacity as Comptroller of the )
State of Illinois; BRUCE RAUNER, in His Official Capacity as )
Governor of the State of Illinois; )
)
    Defendants-Appellees. )
)
(Illinois Collaboration on Youth; Addus Healthcare, Inc.; Aids )
Foundation of Chicago; Caritas Family Solutions; Center for Housing )
and Health; Center for Youth and Family Solutions; Children's Home )
and Aid; Connections for the Homeless; Du Page Youth Services )
Coalition; Family Focus; Haven Youth and Family Services; Housing )
Opportunities for Women; Illinois Coalition Against Sexual Assault; )

- 2 -

Interfaith Housing Development Corporation; Inspiration Corp.; Jewish )
Child and Family Services; Jewish Vocational Service and )
Employment Center; Kemmerer Village; Lessie Bates Davis )
Neighborhood House; Lutheran Child and Family Services; Medical )
Gear, LLC; Midwest Youth Services; New Age Elder Care; New )
Moms Metropolitan Family Services; Omni Youth Services; One Hope )
United; Polish American Association; Project Oz; Puerto Rican )
Cultural Center; RAMP, Inc.; Renaissance Social Services; Revive )
Shelter, Inc.; Sinnissippi Centers; Stepping Stones of Rockford, Inc.; )
The Baby Fold; The Fellowship House; The Harbour; The Night )
Ministry; The Ounce of Prevention Fund; Treatment Alternatives for )
Safe Communiites; Universal Family Connection; Union County; )
Unity Parenting; Western Illinois Managed Home Services; The )
Whiteside County Health Department; Youth Advocate Program; )
Youth Crossroads; and Youth Outreach Services, Plaintiffs- )
Appellants). )
)

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices McBride and Howse concurred in the judgment and opinion.

**OPINION**

¶ 1    The underlying dispute in this case involves the ongoing state budget impasse between the legislature and the Governor. Plaintiffs are social service organizations that have contracts with different state agencies to provide various human services for the State of Illinois in fiscal year 2016.[1] During the fiscal year 2016, plaintiffs did not receive payments on the contracts, despite providing services. The contracts provide that they are subject to legislative appropriations, which were not enacted by the beginning of fiscal year 2016. Plaintiffs filed a complaint seeking payment for their services despite the lack of appropriations, arguing that defendants—Governor Bruce Rauner and officers and heads of various state agencies and departments—were acting beyond the scope of their legal authority, unconstitutionally impairing contractual obligations, denying equal protection of the laws, and depriving them of property

---

[1]Plaintiffs indicate in their brief on appeal that, of the 98 plaintiffs involved in the case at the circuit court level, 61 are parties to this appeal.

without due process. Defendants moved to dismiss on grounds that the complaint was barred by sovereign immunity and failure to state a valid claim for relief. The Circuit Court of Cook County granted the motion to dismiss. Plaintiffs now appeal.

¶ 2                                I. BACKGROUND

¶ 3                            A. Plaintiffs' Complaint

¶ 4        In May 2015, the General Assembly passed an appropriation bill for fiscal year 2016, which authorized sufficient appropriations to cover plaintiffs' contracts. However, Governor Rauner vetoed the appropriations bill on June 25, 2015. The General Assembly passed another appropriations bill on April 13, 2016, which similarly provided appropriations for most of plaintiffs' contracts. The Governor again vetoed the bill on June 10, 2016.

¶ 5        On June 30, 2016, the General Assembly passed, and the Governor signed into law, Public Act 99-524 (Pub. Act 99-524 (eff. June 30, 2016)). This "stop gap" or interim bill provided some appropriations for the first half of fiscal year 2017, with the option to use these appropriations to pay obligations from fiscal year 2016.

¶ 6        Plaintiffs initially filed a two-count complaint on May 4, 2016, against defendants requesting declaratory and injunctive relief regarding the State's failure to pay on the contracts. Plaintiffs filed a third amended complaint on July 20, 2016. Plaintiffs alleged that the most of their contracts with defendants contained the following clause:

> "This contract is contingent upon and subject to the availability of funds. The State, at its sole option, may terminate or suspend this contract, in whole or in part, without penalty or further payment being required if, (1) the Illinois General Assembly or the federal funding source fails to make an appropriation

sufficient for any reason, (2) the Governor decreases the Department's funding by reserving some or all of the Department's appropriation(s) pursuant to power delegated to the Governor by the Illinois General Assembly, or (3) the Department determines, in its sole discretion or as directed by the Office of the Governor, that a reduction is necessary or advisable based upon actual or projected budgetary considerations. Contractor will be notified in writing of the failure of appropriation or of a reduction or decrease."

¶ 7    Plaintiffs asserted that before and after the Governor's vetoes, defendant directors induced plaintiffs to enter into the contracts for the provision of services. Plaintiffs alleged that defendants never invoked the termination provision but continued the contracts, and it was not feasible for plaintiffs to withdraw from the contracts because they would have to give 30 days' notice, would risk never receiving any payment, could potentially face liability to their service populations, and were obligated to other foundations and funding sources.

¶ 8    In count I, plaintiffs alleged *ultra vires* conduct by the Governor and other defendant agency heads in entering into, continuing, and enforcing the contracts, while at the same time vetoing the appropriations bills that provided funding for the contracts. Plaintiffs sought a declaration that defendants exceeded their legal and constitutional authority, injunctive relief in the form of payments of vouchers for services rendered in fiscal year 2016, and preliminary injunctive relief requiring defendants and the Comptroller to immediately pay plaintiffs for bills overdue by 90 days or more.

¶ 9    In count II, plaintiffs alleged that defendants' actions in vetoing the legislative appropriation bills, continuing the contracts, enacting Public Act 99-524, and operating the State

without a budget as required by Article VIII, section 2(b) (Ill. Const. 1970, art. VIII, § 2(b)), defendants have violated the constitutional protection against the impairment of the obligation of contracts. Plaintiffs asserted that Public Act 99-524 permitted agencies to reallocate money appropriated for fiscal year 2017 to pay obligations from fiscal year 2016, but this was subject to defendants' discretion, there were insufficient funds to pay for all obligations incurred in 2016, and plaintiffs have been unpaid for fiscal year 2017. Plaintiffs alleged that defendants impaired both the security of payment and the remedy as (1) Public Act 99-524 resulted in a permanent impairment regarding the amounts due plaintiffs under the contracts and (2) the remedy for nonpayment—an action in the Court of Claims—is feasible only where there are sufficient appropriations of funds from which the claim can be paid. Plaintiffs sought preliminary and permanent injunctive relief and a declaration that defendants' actions and Public Act 99-524 violated the obligation of contracts, rights to due process of law under article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) and impaired their remedies in the Court of Claims. They requested an injunction barring defendants' actions, requiring payment of vouchers that were overdue by 90 days or more, and ensuring they receive full payment for fiscal year 2016 contracts.

¶ 10        In plaintiffs' count III, they asserted that Public Act 99-524 violated due process and equal protection because (1) it did not guaranty any meaningful payment on the contracts, (2) it provided defendants with unchecked discretion as they were not required to treat all claims equally in determining whom to pay and how much to pay for contractual services already rendered, (3) plaintiffs have no opportunity to be heard, and (4) their contractual rights and services are forfeited without compensation.

¶ 11        Plaintiffs sought an injunction ordering the Comptroller to pay the entire sums due plaintiffs for fiscal year 2016, regardless of appropriations, and they sought a preliminary injunction directing the Comptroller to preserve the status quo by requiring defendants to submit all vouchers from plaintiffs and to immediately pay all vouchers more than 90 days overdue regardless of appropriations. Plaintiffs argued they would suffer irreparable injury because (1) they used up all available lines of credit and their cash reserves, (2) they will have difficulty meeting payroll, (3) some organizations faced total closure, (4) their financial credit had been destroyed, (5) plaintiffs laid off professional staff and closed critical programs, and (6) these actions caused the loss of personal networks and relationships in the communities plaintiffs serve.

¶ 12        Plaintiffs also filed a motion for a preliminary injunction.

¶ 13                            B. Defendants' Motion to Dismiss

¶ 14        On August 11, 2016, defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (the Code). 735 ILCS 5/2-619.1 (West 2014). Defendants argued the complaint should be dismissed under section 2-619 (735 ILCS 5/2-619(a)(1), (a)(9) (West 2014)) because (1) the claims were barred by sovereign immunity as the claims were based on contracts with the state, which fell outside the court's jurisdiction; (2) the Court of Claims had exclusive jurisdiction over plaintiffs' claims; and (3) the "officer suit" exception to sovereign immunity was inapplicable as plaintiffs were attempting to enforce a present claim for monetary relief against the State based on existing contracts and defendants did not act *ultra vires* in excess of their authority. Defendants asserted that the complaint should also be dismissed pursuant to section 2-615 of the Code (735 ILCS 5/2-615) (West 2014)) because (1) the terms of plaintiffs' contracts provide that they are contingent upon and subject to

sufficient enacted appropriations and such lawsuits must be filed in the Court of Claims; (2) the Appropriations Clause and Illinois law preclude the relief sought; (3) there has been no impairment of contract as the "stop gap budget" actually provided funding for the contracts and it did not eliminate any contractual rights or remedies available in the Court of Claims; (4) plaintiffs were not deprived of due process because the contracts were contingent upon sufficient appropriations, the legislative process provided all the process due, and plaintiffs could pursue their claims in the Court of Claims; and (5) plaintiffs' equal protection claim must fail as there was a rational basis for not making payments for contracts that were contingent on sufficient, enacted appropriations.

¶ 15    Plaintiffs responded that defendants acted *ultra vires*, the contracts did not exclude liability for services already rendered, and they sufficiently stated their claims. Defendants filed a reply, reiterating many of their essential arguments raised in the initial motion.

¶ 16    The circuit court held a hearing on the motions on August 31, 2016. The judge observed that "the only way to really get law that is going to guide further future cases is by getting appellate court review and the quickest way to do that is by denying the plaintiffs all relief being sought and granting the State's motion to dismiss based on sovereign immunity and the absence of circumstances to trigger the exception that would otherwise preclude the absolute bar of sovereign immunity" The court also held that "even in the absence of that, *** I certainly think that the circumstances you have laid out have met some of the elements for preliminary injunction, but ultimately I think plaintiffs would not be able to succeed on this case for the reasons I think articulated by the State."

¶ 17    In an order issued August 31, 2016, the circuit court denied plaintiffs' motion for a preliminary injunction and granted defendants' motion to dismiss, with prejudice. This appeal followed.

¶ 18                                    C. Mootness

¶ 19    On appeal, plaintiffs request that this court take judicial notice that since the dismissal of their complaint, defendants have reallocated nearly all of the funding for the 2017 fiscal year contracts to pay the outstanding amounts due under the 2016 fiscal year contracts, except for interest. Thus, some plaintiffs have received limited, partial, or no funding for their 2017 fiscal year contracts with defendants. Plaintiffs argue that this case is not moot because they are in the same position of not being paid for fiscal year 2017, the belated payments did not adequately compensate them, and injunctive relief is necessary to fully restore plaintiffs' programs. *American Service Insurance Co. v. City of Chicago*, 404 Ill. App. 3d 769, 781 (2010) (" '[M]ootness occurs once the plaintiff has secured what he basically sought.' " (quoting *Hanna v. City of Chicago*, 382 Ill. App. 3d 672, 677 (2008))). They further argue that even if moot, this case falls within an exception to the doctrine of mootness. Defendants agree that this appeal is not moot on the assumption that not all plaintiffs have been fully paid the amounts they claim.

¶ 20                                    II. ANALYSIS

¶ 21                                 A. Standard of Review

¶ 22    Pursuant to section 2-619.1 of the Code, a party may file a combined motion to dismiss invoking sections 2-615 and 2-619. *Dratewska-Zator v. Rutherford*, 2013 IL App (1st) 122699, ¶ 13. This court reviews motions to dismiss *de novo*. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009).

¶ 23 The question presented by a section 2-615 motion is "whether the allegations of the complaint, when taken as true and viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499 (2009). We consider only those facts apparent from the face of the pleadings, matters of which this court may take judicial notice, and judicial admissions in the record. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). Any exhibits attached to the complaint "are considered part of the pleading for every purpose." *Dratewska-Zator*, 2013 IL App (1st) 122699, ¶ 14. "Mere conclusions of law or facts unsupported by specific factual allegations in a complaint are insufficient to withstand a section 2-615 motion to dismiss." *Ranjha v. BJBP Properties, Inc.*, 2013 IL App (1st) 122155, ¶ 9.

¶ 24 In a motion to dismiss under section 2-619, the moving party "admits the legal sufficiency of the complaint, but asserts an affirmative defense or other matter to defeat the plaintiff's claim." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). We consider the pleadings and any supporting documentary evidence " 'in the light most favorable to the nonmoving party.' " *Id.* at 367-68 (quoting *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997)). Grounds for dismissal include "[t]hat the court does not have jurisdiction of the subject matter of the action" or that there is some "other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(1), (9) (West 2014).

¶ 25 Additionally, this case involves the construction of statutory language, which we review *de novo*. *People v. Perez*, 2014 IL 115927, ¶ 9. We presume that statutes are constitutional. *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 146 (2003). In construing statutory language, this court's "primary objective is to ascertain and give effect to the legislature's intent, keeping in mind that the best and most reliable indicator of that intent is the statutory language itself, given

its plain and ordinary meaning." *Perez*, 2014 IL 115927, ¶ 9. We also review the constitutionality of a statute *de novo*. *Kanerva v. Weems*, 2014 IL 115811, ¶ 33. We presume statutes are constitutional, and the opposing party bears the burden of rebutting this presumption. *American Federation of State, County, & Municipal Employees, Council 31 v. State*, 2015 IL App (1st) 133454, ¶ 19 (*AFSCME*). We must, whenever reasonably possible, construe a statute to uphold its constitutionality. *Id.*

¶ 26    On appeal, "this court reviews the judgment, not the reasoning, of the trial court, and we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct." *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24.

¶ 27                        B. Sovereign Immunity

¶ 28    The Illinois Constitution of 1970 abolished the doctrine of sovereign immunity " '[e]xcept as the General Assembly may provide by law.' " *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485, ¶ 42 (quoting Ill. Const. 1970, art. XIII, § 4). The General Assembly revived the doctrine in the State Lawsuit Immunity Act (745 ILCS 5/0.01 *et seq.* (West 2012)), which states that, except as provided in the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2012)) and other specified statutes, " 'the State of Illinois shall not be made a defendant or party in any court.' " *Leetaru*, 2015 IL 117485, ¶ 42 (quoting 745 ILCS 5/1 (West 2012)).

¶ 29    In turn, the Court of Claims Act vests the Court of Claims with exclusive jurisdiction over nine enumerated matters, including "[a]ll claims against the State founded upon any contract entered into with the State of Illinois" (705 ILCS 505/8(b) (West 2014)) and claims "against the State founded upon any law of the State of Illinois" (705 ILCS 505/8(a) (West

2014)). "Based on the clear directives of these statutes, there is no dispute that claims against the state founded on a contract must be filed in the Court of Claims." *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 161 (2010).

¶ 30    Sovereign immunity aims to "protect[ ] the State from interference in its performance of the functions of government and preserve[ ] its control over State coffers." (Internal quotation marks omitted.) *Leetaru*, 2015 IL 117485, ¶ 47.

¶ 31    On appeal, plaintiffs contend that sovereign immunity does not preclude their claims because the Governor exceeded the powers of his office in entering into the contracts and accepting plaintiffs' services while at the same time vetoing the General Assembly's budgets that had appropriated sufficient funds for the contracts. Plaintiffs argue that the Governor could have canceled the contracts or used his line-item veto power to preserve parts of the appropriation bills that funded plaintiffs' contracts and this conduct constituted an abuse of power and would constitute fraud or unfair trade if it were a private business.

¶ 32    Defendants assert that plaintiffs' claim is barred by sovereign immunity and the "officer suit" exception does not apply.

¶ 33    Whether a suit is against the State "depends upon the issues involved and the relief sought." (Internal quotation marks omitted). *State Building Venture*, 239 Ill. 2d at 161. This determination is not controlled by the formal identification of the parties. *Grey v. Hasbrouck*, 2015 IL App (1st) 130267, ¶ 24. "There is a recognized presumption that the State or a department thereof cannot violate the constitution or the laws of the State. [Citation.] Where such a violation takes place, the violation is deemed to be made by a State officer or the head of a department of the State, and such officer or head may be restrained by proper action instituted by

a citizen." (Internal quotation marks omitted). *Id.* (quoting *Herget National Bank of Pekin v. Kenney*, 105 Ill. 2d 405, 411 (1985), quoting *Schwing v. Miles*, 367 Ill. 436, 441-42 (1937)).

¶ 34    "[T]he prohibition against making the State of Illinois a party to a suit cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." (Internal quotation marks omitted). *Healy v. Vaupel*, 133 Ill. 2d 295, 308 (1990). Moreover, if the State "will be directly and adversely affected by the judgment or decree, making the State the real party against whom relief is sought, the suit is against the State." (Internal quotation marks omitted.) *Herget*, 105 Ill. 2d at 408-09.

¶ 35    The "officer suit" exception to sovereign immunity applies "when a state officer performs illegally or purports to act under an unconstitutional act or under authority which he does not have." *Leetaru*, 2015 IL 117485, ¶ 46. "In such instances, the suit is not against the State. [Citation.] The exception is based on the presumption that 'the State, or a department thereof, will not, and does not, violate the constitution and laws of the State, but that such violation, if it occurs, is by a State officer or the head of a department of the State, and such officer or head may be restrained by proper action instituted by a citizen.' " (Internal quotation marks omitted). *Illinois County Treasurers' Ass'n v. Hamer*, 2014 IL App (4th) 1302869, ¶ 41 (quoting *PHL, Inc. v. Pullman Bank & Trust Co.*, 216 Ill. 2d 250, 261 (2005)). "Where the plaintiff is not attempting to enforce a present claim against the State but rather seeks to enjoin the defendant from taking actions in excess of his delegated authority, and in violation of the plaintiff's protectable legal interests, the suit does not contravene the immunity prohibition." *Grey*, 2015 IL App (1st) 130267, ¶ 25 (citing *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill. 2d 540, 548 (1977)).

¶ 36        That said, "not every legal wrong" will trigger the officer suit exception, such as where the conduct "amounts to a simple breach of contract," or where an official "exercised the authority delegated to him or her erroneously." *Leetaru*, 2015 IL 117485, ¶ 47. "The exception is aimed, instead, at situations where the official is not doing the business which the sovereign has empowered him or her to do or is doing it in a way which the law forbids." *Id.*

¶ 37        With these principles in mind, we examine plaintiffs' claims. Plaintiffs' complaint alleges that the State failed to fulfill its obligations under the contracts in failing to pay the amounts owed for the services provided, that defendants acted outside their authority, and that several constitutional violations thus occurred. Plaintiffs argue that defendants have acted in an *ultra vires* manner because they conducted state operations without a budget, entered into and continued contracts without appropriations, and vetoed appropriation bills that would have provided funding.

¶ 38        Under article VIII, section 2, of the Illinois Constitution, the Governor must submit a proposed budget not to exceed estimated available funds: "[t]he Governor shall prepare and submit to the General Assembly *** a State budget for the ensuing fiscal year. *** Proposed expenditures shall not exceed funds estimated to be available for the fiscal year as shown in the budget." Ill. Const. 1970, art. VIII, § 2(a). Article VIII, section 2 further provides that the General Assembly "shall make appropriations for all expenditures of public funds by the State. Appropriations for a fiscal year shall not exceed funds estimated by the General Assembly to be available during that year." Ill. Const. 1979, art. VIII, § 2(b). The General Assembly may enact laws by bill through the concurrence of a majority of each house. Ill. Const. 1970, art. IV, § 8. Pursuant to article IV, section 9, the Governor has the constitutional power to veto bills passed by the General Assembly. "If the Governor does not approve the bill, he shall veto it by returning

it with his objections to the house in which it originated. Any bill not so returned by the Governor within 60 calendar days after it is presented to him shall become law." Ill. Const. 1970, art. IV, § 9(b). The Governor's veto power extends to appropriation bills. Ill. Const. 1970, art. IV, § 9(d). With regard to appropriations, article IV, section 9(d), specifically provides that the Governor has the authority to

> "reduce or veto any item of appropriations in a bill presented to him. Portions of a bill not reduced or vetoed shall become law. An item vetoed shall be returned to the house in which it originated and may become law in the same manner as a vetoed bill." Ill. Const. 1970, art. IV, § 9(d).

¶ 39    The General Assembly may overcome a veto by a three-fifths vote. Ill. Const. 1970, art. IV, § 9(c).

¶ 40    Considering the constitutional provisions set forth above, plaintiffs' contention of *ultra vires* conduct is without merit. The Governor was not obligated to approve any or all portions of appropriations bills by the General Assembly. Indeed, both the Governor and the General Assembly are constitutionally constrained to propose or pass budgets and appropriations that do not exceed estimated available funds. Ill. Const. 1970, art. VIII, § 2(a), (b). The General Assembly's exercise of its legislative authority cannot be compelled, and our courts do not "pass on a purely political question." *Daly v. County of Madison*, 378 Ill. 357, 362 (1941). And as stated, the Governor has the authority to veto bills passed by the General Assembly, including appropriations bills. Ill. Const. 1970, art. IV, § 9. *Williams v. Kerner*, 30 Ill. 2d 11, 13-14 (1963) (Governor acts in a legislative capacity when considering bills, and redistricting bill is within Governor's legislative veto power). The General Assembly has

"discretion to determine the amount which should be appropriated for any particular object. The Governor, as the chief executive of the State, is given the right to approve or disapprove of the action of the legislature in making such an appropriation. He may disapprove of it for the reason that in his judgment no appropriation should be made for such a purpose, or for the reason that the amount appropriated is too large, or for any other reason satisfactory to him ***." *Fergus v. Russel*, 270 Ill. 304, 348-49 (1915) (Governor forbidden to exercise any legislative function except as expressly provided in constitution).

¶ 41        See *State ex rel. Sego v. Kirkpatrick*, 524 P.2d 975, 978 (New Mexico 1974) (noting that Governor's veto power is subject to Governor's judgment and discretion and cannot be compelled by the legislative or judicial branches, but veto power is not an absolute power entirely beyond judicial review as it must be exercised within Governor's constitutional authority). Thus, contrary to plaintiffs' argument, the Governor did not act outside his authority in vetoing proposed budgets by the General Assembly.

¶ 42        Defendants assert this case amounts to simple breach of contract action, and *Joseph Construction Co. v. Board of Trustees of Governors State University* is helpful to our analysis. In that case, the plaintiff asserted that the claims were not breach of contract claims but were instead equitable claims seeking injunctive and declaratory relief. *Joseph Construction Co. v. Board of Trustees of Governors State University*, 2012 IL App (3d) 110379, ¶ 46. The plaintiff alleged that it submitted its request for final payment of the amounts due under the terms of its contract with the defendant state university and that the defendant acted outside the scope of its authority by failing to honor the terms of the agreement in arbitrarily withholding the funds. The

plaintiff requested an order prohibiting the defendant from withholding funds and declaring that the plaintiff had performed the contract and was entitled to the amount due under the contract. *Id.* ¶ 47. The court held that the plaintiff essentially alleged breach of contract as the entire action was premised upon the contract and fell within the exclusive jurisdiction of the Court of Claims. *Id.* ¶ 50. Despite the plaintiff's assertion that the defendant acted outside the scope of authority in dispersing funds to another contractor, the prospective injunctive relief exception to the doctrine of sovereign immunity did not apply. *Id.* ¶ 52. The court held that "when the gravamen of the complaint is breach of contract, a prayer for injunctive relief is nothing more than a thinly disguised breach of contract action." (Internal quotation marks omitted.) *Id.* ¶ 48. In determining whether sovereign immunity applies, "substance takes precedent over form." (Internal quotation marks omitted.) *Id.* ¶ 50. Although "artful pleadings can allow any plaintiff to suggest that a state employee acts outside the scope of his or her employment when disbursing funds to which the plaintiff feels entitled[, s]uch skilled pleadings, however, are simply not sufficient to defeat the Court of Claims' jurisdiction." *Id.* ¶ 52. "When the state employee allegedly breaches a duty that arises solely by virtue of his state employment, sovereign immunity will bar in circuit court an action that is founded on that breach." (Internal quotation marks omitted.) *Id.*

¶ 43　　　　The gravamen of plaintiffs' claims was defendants' failure to pay the amounts due under the contracts. This is in essence a breach of contract claim, which falls within the exclusive jurisdiction of the Court of Claims. *Id.* ¶ 50; *State Building Venture*, 239 Ill. 2d at 164-65. Consistent with that, the contracts involved here contained a clause providing that it is within defendants' discretion to terminate or suspend the contracts and that the contracts were contingent on sufficient appropriations by the General Assembly. Plaintiffs' contention that defendant agency heads acted in excess of their authority in entering into and continuing

contracts when there were no appropriations did not constitute *ultra vires* conduct as the contracts themselves were expressly contingent on the availability of sufficient appropriated funds. The failure of that contingency, *i.e.*, sufficient appropriations, did not render defendants' conduct unconstitutional or unlawful; it is simply a condition or contingency of the contracts that did not materialize. This contingency is consistent with case law and other statutory law. See State Comptroller Act (15 ILCS 405/9(c) (West 2014) (barring expenditure of state funds absent an appropriation). Additionally, plaintiffs represented that their contracts were attached to their complaint in compliance with section 2-606 (735 ILCS 5/2-606 (West 2014)), which requires such attachment for "a claim *** founded upon a written instrument." Accordingly, their claims are "founded upon any contract entered into with the State." (705 ILCS 505/8(b) (West 2014)).

¶ 44        Plaintiffs concede that defendants have not taken any action against any plaintiffs with respect to enforcing or compelling their performance under the contracts. Indeed, plaintiffs indicated that they have additional reasons for continuing performance such as liability issues, funding obligations from other organizations, and fear of never receiving payment at all or losing funding altogether if they ceased performing. There is no merit to plaintiffs' contention that, essentially, by not invoking the discretionary clause in their contracts related to termination, defendants have acted *ultra vires*.[2]

---

[2]Plaintiffs suggest that defendants' actions would amount to fraud or unfair business practices in entering and continuing the contracts while vetoing their funding. To the extent that plaintiffs' argument could be construed to allege that sovereign immunity should not apply because defendants committed a tort in continuing the contracts, we observe that the Court of Claims also has exclusive jurisdiction over cases sounding in tort against the State. 705 ILCS 505/8(d) (West 2014). "If one could defeat sovereign immunity by simple reference to a tort, there would be no such thing as sovereign immunity to tort actions." *Jackson v. Alverez*, 358 Ill. App. 3d 555, 561 (2005). The veto power and authority to enter into contracts were normal and official functions of state employment, and the relief sought would essentially "operate to control the actions of the State or subject it to liability." *Currie v. Lao*, 148 Ill. 2d 151, 158 (1992)). See *Carmody v. Thompson*, 2012 IL App (4th) 120202, ¶¶ 20-37 (tortious interference with contract and other torts barred by sovereign immunity where termination letter drafted by defendant assistant dean did not show malicious intent, duty was not owed to plaintiff independently of state

¶ 45        The relief requested by plaintiffs further supports our conclusion. Plaintiffs contend on appeal that their claims are not barred by sovereign immunity because they are seeking only prospective injunctive relief. Their complaint and other arguments belie this assertion. It is true that plaintiffs' complaint requests injunctive relief. However, plaintiffs also sought payment on vouchers for services rendered in fiscal year 2016 and for any bills overdue by 90 days or more. Their complaint sought a court order requiring defendants to pay immediately the amounts they claimed were owed under their contracts despite the lack of appropriations. Thus, plaintiffs are seeking payment for services already provided in relation to contracts with the State which are already in existence, regardless of whether there are sufficient appropriations for those payments.

¶ 46        "A party seeking a monetary judgment against an agency payable out of state funds must bring its action in the Court of Claims." *Meyer v. Department of Public Aid*, 392 Ill. App. 3d 31, 35 (2009) (citing *James v. Mims*, 316 Ill. App. 3d 1179 (2000)). See *State Building Venture*, 239 Ill. 2d at 162-65 (declaratory judgment action barred by sovereign immunity, and "officer suit" exception did not apply where complaint sought to resolve renewal rights under lease with the State and alleged damage from defendant's interpretation of lease and costs and fees and thus constituted a present claim founded on a contract with the state); *PHL, Inc.,* 216 Ill. 2d at 263-64 (breach of contract claim to compel defendant's treasurer to close on buy-sell agreements, alleging that treasurer was acting in excess of lawful authority, was barred by sovereign immunity, and nothing forbade treasurer from following legal advice of Attorney General).

¶ 47        Plaintiffs assert that they may seek relief in the circuit court even absent an appropriation for their contracts where a government official fails to carry out the official business he is empowered to do or is carrying out that duty in an unconstitutional or illegal manner. While we

employment, judgment for plaintiff would control actions of the State and subject it to liability, and actions pertained to matters ordinarily within dean's role).

acknowledge this general principle as stated by our supreme court in *Leetaru*, 2015 IL 117485, ¶ 47, the present case is distinguishable from the cases cited by plaintiffs.

¶ 48         For example, in *Jorgensen v. Blagojevich*, 211 Ill. 2d 286, 306-07 (2004), the supreme court found that both a statute prohibiting cost of living increases for judicial salaries and the Governor's reduction veto, which removed funding for a cost of living increase, violated the constitutional provision prohibiting the diminishment of judicial salaries because the cost of living increases had already vested. The court held that it would not violate the separation of powers and it had authority to order payment and compel the Comptroller to pay, despite lack of a specific legislative appropriation, "pursuant to the inherent right of the courts to order payment of judicial salaries which the state was required by our constitution to make." *Id.* at 315.

¶ 49         In *Hamer*, 2014 IL App (4th) 130286, ¶ 28, the Fourth District held that the court could compel payment of county treasurers' stipends as required by statute without violating the separation of powers despite lack of a sufficient appropriation by the General Assembly because failing to pay the stipends in the amount required by statute violated the constitutional prohibition against decreasing an elected officer's salary during his or her term of office. The court relied on the judiciary's duty to construe the constitution and carry out judicial functions in finding that it was within its power to compel payment of the statutory stipends "*when the failure to pay stipends in the amount required by statute violates the constitution.* In this limited circumstance, a court order compelling payment without appropriation is not prohibited by the separation of powers doctrine but necessary to ensure compliance with constitutional requirements." (Emphasis in original.) *Id.* ¶ 29.

¶ 50         In contrast to these cases, plaintiffs here cannot point to a specific constitutional or statutory provision that either specifically prohibits defendants' actions or that specifically

requires an appropriation for plaintiffs' benefit and would compel payment despite the Governor's veto. There is no statutory mandate. They also do not contend that the Governor did not follow proper veto procedures as set forth in the constitution. See *Russell v. Blagojevich*, 367 Ill. App. 3d 530, 532-38 (2006) (denial of cost of living increase to State's Attorney was not unconstitutional as there was no constitutional prohibition to the diminishment of the State's Attorney's salary, and ordering the Comptroller to make the payments would override the General Assembly without a constitutional mandate).

¶ 51                                   C. The Appropriations Clause

¶ 52       Defendants argue that, even assuming that sovereign immunity does not apply and the circuit court has jurisdiction over plaintiffs' claims, payment on the contracts is precluded by the appropriations and separation of powers clauses of the Illinois Constitution in the absence of any enacted, sufficient appropriations by General Assembly. Additionally, they assert that the terms of the contracts themselves—the contingency provision—and the State Comptroller Act prohibit payment.

¶ 53       The appropriations clause in the Illinois Constitution provides in relevant part: "The General Assembly by law shall make appropriations for all expenditures of public funds by the State." Ill. Const. 1970, art. VIII, § 2(b). "An appropriation involves the setting apart from public revenue a certain sum of money for a specific object." (Internal quotation marks omitted). *State v. American Federation of State, County & Municipal Employees, Council 31*, 2016 IL 118422, ¶ 42 (*State v. AFSCME*), "The power to appropriate for the expenditure of public funds is vested exclusively in the General Assembly; no other branch of government holds such power." *Id.*

> "In the state budget-making process *** although the Governor is constitutionally required to set forth in his proposed budget 'the estimated

balance of funds available for appropriation' (Ill. Const. 1970, art. VIII, § 2(a)), and statutorily required to set forth 'the amounts recommended *** to be appropriated to the respective departments, offices, and institutions' (15 ILCS 20/50-5(a) (West 2014)), the General Assembly alone has the authority to make any such appropriations (Ill. Const. 1970, art. VIII, § 2(b))." *Id.*

¶ 54    Any attempts to "expend state funds without legislative appropriation 'raise serious separation of powers problems.' " *Hamer*, 2014 IL App (4th) 130286, ¶ 12 (quoting *McDunn v. Williams*, 156 Ill. 2d 288, 308 (1993)); *American Federation of State, County & Municipal Employees v. Netsch*, 216 Ill. App. 3d 566, 568 (1991) (same).

¶ 55    The State Comptroller Act, as cited by defendants, provides in pertinent part:

"The Comptroller shall examine each voucher required by law to be filed with him and determine whether unencumbered appropriations or unencumbered obligational or expenditure authority other than by appropriation are legally available to incur the obligation or to make the expenditure of public funds. If he determines that unencumbered appropriations or other obligational or expenditure authority are not available from which to incur the obligation or make the expenditure, the Comptroller shall refuse to draw a warrant." 15 ILCS 405/9(c) (West 2014).

¶ 56    "[U]nder general principles of contract law, statutes and laws in existence at the time a contract is executed are considered part of the contract, and [i]t is presumed that parties contract with knowledge of the existing law." (Internal quotation marks omitted). *State v. AFSCME*, 2016 IL 118422, ¶ 53.

¶ 57    Courts have found that the Comptroller may not issue payments where there are no appropriations against which warrants may be drawn. See *Russell*, 367 Ill. App. 3d 530 (where former State's Attorney failed to show clear duty or authorization by Comptroller to pay cost of living adjustment and General Assembly had made no appropriation, attorney was not entitled to *mandamus* relief); *Board of Trustees of Community College District No. 508 v. Burris*, 118 Ill. 2d 465, 468, 478-79 (1987) (comptroller properly refused college's claims for disbursement of funds for veterans' scholarship program where governor reduced funding for the scholarship and the General Assembly did not override the line-item veto, resulting in insufficient appropriations, noting that the legislature and governor intended for the funding to be reduced by such actions and disbursement would violate separation of powers doctrine); *People ex rel. Board of Trustees of the University of Illinois v. Barrett*, 382 Ill. 321 (1943) (no *mandamus* relief available where auditor had no duty to issue warrants for payments from State when it was not clearly shown that proper appropriations had been made for such warrants, where appropriations for university did not contain items for additional services performed by a professor and employee under special designation).

¶ 58    In *State v. AFSCME*, 2016 IL 118422, ¶¶ 47-50, our supreme court held that wage increases called for by a collective bargaining agreement between state employees and the State of Illinois were subject to the constitutional appropriation power and the increases therefore could not be implemented absent a corresponding appropriation by the General Assembly. The appropriation contingency was implied in the collective bargaining agreement at issue by virtue of a specific statute in the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2014)). *State v. AFSCME*, 2016 IL 118422, ¶ 47 (citing Pub. Act 85-1032 § 2 (eff. July 1, 1998)). In prior agreements, it had been an express provision of the contract. *Id.* ¶ 49. The

supreme court held that the collective bargaining agreement was not rendered meaningless despite being subject to the appropriation power of the General Assembly. *Id.* ¶ 50. It recognized the difference between collective bargaining in the public versus private sectors in that "public employee unions, as a part of their collective-bargaining duties, must often engage in political activities in order to achieve what most private sector unions are able to achieve solely at the bargaining table." (Internal quotation marks omitted.) *Id.* Unions bargained with state agencies "with the knowledge that any agreement reached will be affected by the General Assembly's appropriation power." *Id.* ¶ 51. Thus, the court held that the General Assembly's appropriation authority was "an inherent feature of collective bargaining in the public sector." *Id.* The Public Labor Relations Act was in effect before the collective bargaining agreement was formed and it was therefore considered part of the contract. *Id.* ¶ 53.

¶ 59        The supreme court's decision in *State v. AFSCME* controls the present case and dictates a similar result. Plaintiffs here seek payment for services provided pursuant to their contracts with the State, despite lack of enacted appropriations, where the contracts were expressly contingent on appropriations. Plaintiffs do not contend that they were unaware of such provisions. Consistent with the supreme court's holding in *State v. AFSCME*, these contractual obligations are subject to the constitutional appropriations power and cannot be satisfied without proper appropriations.

¶ 60        Plaintiffs assert that it would not interfere with legislative authority to make appropriations if this court ordered defendants to pay the contracts prospectively on a timely basis given the constitutional issues at play. Although the court has recognized limited exceptions to the appropriations clause, they are not applicable here. See *Jorgensen*, 211 Ill. 2d 286 (discussed *supra* ¶ 48). The *Jorgensen* court distinguished *Burris* on grounds that the court

was providing the Comptroller with authorization to draw warrants by court order "issued pursuant to the inherent right of the courts to order payment of judicial salaries which the state was required by our constitution to make, a situation not presented or addressed by *Burris*. The distinction is critical." *Id.* at 315. Compelling the Comptroller to draw warrants in *Burris* "would have created separation of powers problems." *Id.* In contrast, the *Jorgensen* court held that compelling the Comptroller to draw warrants for the cost of living increase was "necessary to prevent the separation of powers doctrine from being violated." *Id.* Under article VI, section 14, of the Illinois Constitution, "judges '*shall* receive salaries provided by law' and '[a]ll salaries and such expenses as may be provided by law *shall* be paid by the State.' " (Emphasis in original). *Id.* at 314 (quoting Ill. Const. 1970, art. VI, § 14). The court held that where an action is compelled by the constitution, " 'so much money as is necessary to obey the command may be disbursed without any explicit appropriation.' " *Id.* (quoting *Antle v. Tuchbreiter*, 414 Ill. 571, 581 (1953)).

¶ 61        In the present case, we have no inherent right to order payment on plaintiffs' contracts, unlike the protection of judicial salaries provided for in our constitution. Moreover, the appropriations contingency was specifically set forth as an explicit contractual provision, which states that the contract was "contingent upon and subject to the availability of funds. The State, at its sole option, may terminate or suspend this contract, in whole or in part, without penalty or further payment being required" if the General Assembly or federal government fails to make an appropriation, the Governor decreases a department's funding by reserving some or all of it, or the department or Governor determines that a reduction is required or advisable based on budgetary factors.

¶ 62    In construing a contract, our primary task is to determine and give effect to the parties' intent. *Thompson v. Gordon*, 241 Ill. 2d 428, 441-42 (2011). We construe contractual language as a whole, and we "will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." *Id.* at 442. "We must interpret a contract to be consistent with the law and public policy of this state." *Enterprise Leasing Co. of St. Louis v. Hardin*, 2011 IL App (5th) 100201, ¶ 22.

¶ 63    Accordingly, we must give effect to the appropriation contingency clause of the contracts at issue here. In so holding, we are not making a finding that, as plaintiffs accuse, there was "no contract at all" or that any liability on part of defendants for services rendered by plaintiffs is otherwise precluded. Rather, we are giving effect to the plain language of the contingency clause. Plaintiffs argue that the contracts do not allow defendants to block the funding and that defendants "failed" to terminate the contracts. However, the contingency clause does not prohibit the Governor from exercising his veto powers or require him to use a line-item veto to preserve appropriations specifically for the contracts. Further, it appears from the record available that defendants have neither attempted to terminate or to enforce the contracts against plaintiffs. The parties agreed that defendants have not attempted to enforce the contracts or any contractual rights against plaintiffs in court. Moreover, the contractual terms did not obligate defendants to terminate the contracts if sufficient funding was unavailable. Indeed, the record indicates that defendants do not want to cancel the contracts at issue, and the Governor and the General Assembly are attempting to resolve the budget issues, as is evident by the passage of Public Act 99-524, which provided some funding for the contracts at issue.

¶ 64                                    D. Impairment of Contract Claim

¶ 65    Plaintiffs assert that defendants have unlawfully impaired the obligation of contracts because Public Act 99-524 made payment less secure and provided for only partial funding of contracts for fiscal years 2016 and 2017. They contend that the failure to have a budget constituted an impairment of contract. They assert that Public Act 99-524 itself constitutes an unlawful impairment of contract because it cuts obligations to pay the agreed-upon contractual amounts and it impairs the legal remedy available to plaintiffs. Plaintiffs argue that the Governor's veto of appropriation bills also impaired the State's obligations and constituted a taking of a contractual right that the General Assembly had approved.

¶ 66    Defendants assert that the impairment of contracts protection does not impose an affirmative duty to fulfill all contractual obligations and it does not apply here because (1) plaintiffs' contracts contained express appropriation contingencies, (2) plaintiffs' claims are for a breach of contract, not the unconstitutional enactment of a law that impairs contractual obligations, (3) Public Act 99-524 did not take away any existing contractual rights or remedies, and (4) the remedy for impairment of contracts would be invalidation of the law, not enforcement of the contractual rights.

¶ 67    "The contracts clause provides that states cannot pass laws that impair the obligation of contracts." *AFSCME*, 2015 IL App (1st) 133454, ¶ 44 (citing U.S. Const., art. I, § 10, and Ill. Const., art. I, § 16). "A statute violates the contracts clauses of the state and federal constitutions when it operates as a substantial impairment of a contractual relationship." *Id.* "All contracts are subject to the police power of the state and, as a result, the state may infringe on a person's contractual rights in order to safeguard the interests of its people." *Id.* Whether a law impairs the obligation of a contract depends on "(1) whether there is a contractual relationship; (2) whether the law at issue impairs that relationship; (3) whether the impairment is substantial; and (4)

whether the law serves an important public purpose." *Id.* Where one of the parties to a contract is the State, a higher level of scrutiny is imposed. *Id.*

¶ 68      Plaintiffs argue that the failure of the government to pass a budget was a breach of article VII, section 2(b), of the Illinois Constitution (the General Assembly "by law shall make appropriations for all expenditures of public funds by the State. Appropriations for a fiscal year shall not exceed the funds estimated to be available during the fiscal year") and this, in itself, constituted an impairment of contracts.

¶ 69      We disagree. The impairment of contracts clause provides that "[n]o *** law impairing the obligation of contracts *** shall be passed." Ill. Const., art. I, § 16. The failure to pass a law, that is, the *absence* of a law here did not amount to an infringement on the obligation of contracts. Notably, the General Assembly twice passed appropriations bills that would have provided funding for the contracts at issue, and the General Assembly therefore did not "breach" article VII, section 2(b). Moreover, it is a settled principle of contract law that "[t]he law existing at the time a contract is made becomes a part of it. The constitutional provision denying the power to pass any law impairing the obligation of a contract has reference only to a statute enacted after the making of a contract." *People v. Ottman*, 353 Ill. 427, 430 (1933). There is no indication that plaintiffs entered into any contracts at a time when budget appropriations were fully in place.

¶ 70      As discussed, the contracts at issue contained a clause providing that they were subject to legislative appropriations. The plaintiffs do not contend that they were unaware of such provisions. This contractual contingency was also consistent with the law, namely, the appropriations clause, State Lawsuit Immunity Act, Court of Claims Act, and the State Comptroller Act.

¶ 71　　In that regard, we are guided by our supreme court's decision in *State v. AFSCME*, 2016 IL 118422, ¶ 52. The court held that, under the terms of the contract and the law, a wage increase in a collective bargaining agreement was always contingent on legislative funding and therefore "failure of that contingency to occur cannot 'impair' AFSCME's agreement with the State." *Id.* The legislative appropriation contingency need not be explicit in order to avoid violating the contracts clause because " 'statutes and laws in existence at the time a contract is executed are considered part of the contract,' and '[i]t is presumed that parties contract with knowledge of the existing law.' " *Id.* ¶ 53 (quoting *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 217 (1997)). As such, section 21 of the Illinois Public Labor Relations Act was part of the collective bargaining agreement as it was in effect before the agreement was formed. *Id.* Failure to provide sufficient appropriations would not constitute impairment of a contract; rather, it would merely constitute a "failure of that contingency." *Id.* ¶ 52. This did not create uncertainty in the State's contractual obligations: "We reiterate that this case involves a particular contract: a multiyear collective bargaining agreement. Whether other state contracts with different provisions and different controlling law could also be subject to legislative appropriation without offending the contracts clause is not before us." *Id.* ¶ 54.

¶ 72　　Similarly, like the unions bargaining in *State v. AFSCME*, plaintiffs here would have been aware that in contracting with the State, funding could be affected by the General Assembly's appropriations decisions. As the supreme court stated, the contractual obligations "were always contingent on legislative funding," and therefore, failure of that contingency to occur cannot impair the parties' contracts. *Id.* ¶ 52. The failure of the appropriations contingency here did not amount to an unconstitutional impairment of plaintiffs' contracts.

¶ 73        Plaintiffs argue that their contracts were unconstitutionally impaired by Public Act 99-524, which, ironically, was meant to provide at least some appropriations for the contractual obligations at issue. Public Act 99-524 provided appropriations for fiscal year 2017 contracts with the option to reallocate those funds to pay fiscal year 2016 obligations, which is what has occurred. Although Public Act 99-524 did not provide full funding of all contracts, there is no indication that the law actually altered any provision of or otherwise impaired plaintiffs' contracts. Plaintiffs do not allege that the law contained any provision that actually canceled any amounts owed under the contracts that remain outstanding after the appropriations are applied or changed their terms. Plaintiffs' contention may state a breach of contract claim, but this does not amount to an unconstitutional impairment of contracts. The contracts clause prohibits subsequent legislation that eliminates or impairs the rights in an existing contract; it does not mandate that the government fulfill its contracts. "Whether the State is liable on a particular contract is a different question from whether the State is immune from being sued by an aggrieved party on that contract." *S.J. Groves & Sons Co. v. State*, 93 Ill. 2d 397, 404 (1982), *overruled in part on other grounds*, *Rossetti Contracting Co. v. Court of Claims*, 109 Ill. 2d 72 (1985).

¶ 74        Plaintiffs contend that their remedies under the contracts have been impaired because under the State Lawsuit Immunity Act, their remedy for nonpayment is only in the Court of Claims and the Court of Claims has a policy of paying claims only out of appropriated funds. However, this was the case regardless of the passage of Public Act 99-524. Public Act 99-524 has not altered their remedy or the obligations under the contracts. If anything, it has improved their position by providing at least some appropriations. " 'Although it cannot be sued without its consent, the state, when making a contract with an individual, is liable for a breach of its agreement in like manner as an individual contractor. And while it may refuse to respond in

damages, and leave a claimant without any remedy, as it may refuse to pay its bonds, the obligation remains.' " *S.J. Groves & Sons Co.*, 93 Ill. 2d at 404-05 (quoting (72 Am. Jur. 2d *States, Territories, and Dependencies* § 88 (1974)). "[T]he absence of a remedy that would be available to a contracting party in instituting a suit in the circuit courts does not demonstrate that the State is not bound by its contracts. The contractual obligation remains; it is the remedy for any recovery on a claim that is limited." *Id.* at 405.

¶ 75        Plaintiffs argue that the Fifth District concluded in an unpublished order, *American Federation of State, County, and Municipal Employees, Council 31 v. State*, 2015 IL App (5th) 150277-U, ¶ 31 (*AFSCME v. State*), that the failure to appropriate funds to pay State employees' salaries constituted an unlawful impairment of contract. "[C]itation to an unpublished order in this court lacks precedential value as Illinois Supreme Court Rule 23(e)(1) (eff. July 1, 2011) expressly provides that '[a]n order entered under *** this rule is not precedential and may not be cited by any party.' " *In re Commitment of Fields*, 2012 IL App (1st) 112191, ¶ 76. Moreover, the Fifth District case involved an entirely different procedural posture from the present case. It solely involved a request for declaratory and injunctive relief. *AFSCME v. State*, 2015 IL App (5th) 150277-U, ¶ 2. The Fifth District was tasked with determining whether the circuit court abused its discretion in issuing a temporary restraining order (TRO) requiring the State to pay, absent appropriations, salaries of State employees required to work. *Id.* ¶ 19. The primary consideration on appeal was whether to preserve the status quo until a hearing regarding a preliminary injunction could be held, where the case involved an "extremely time-sensitive matter" given a looming deadline for issuing and processing paychecks. *Id.* ¶ 18. Accordingly, the Fifth District's analysis focused on whether the party had a protectable right and would suffer irreparable harm, whether there was an adequate remedy at law, the likelihood of success on the

merits, and balancing the equities. *Id.* ¶ 20. The Fifth District observed that it was not deciding the case on the merits. *Id.* ¶ 33. Significantly, the Fifth District relied heavily on *State v. American Federation of State, County, & Municipal Employees, Council 31*, 2014 IL App (1st) 130262. However, that case was subsequently reversed by our supreme court. *State v. AFSCME*, 2016 IL 118422.

¶ 76                                    E. Equal Protection[3]

¶ 77        Plaintiffs contend that they have the same right to payment, despite lack of legislative appropriations, as the state employees under the temporary restraining order upheld by the Fifth District in the unpublished order in *AFSCME v. State*, 2015 IL App (5th) 150277-U. They assert that they are not being paid while other groups continue to be paid despite the ongoing budget impasse and lack of a proper appropriations bill because plaintiffs serve a politically unpopular and powerless group.

¶ 78        Defendants counter that plaintiffs are merely attempting to convert their breach of contract claim into an equal protection claim. Defendants assert there is a rational basis for the conduct and plaintiffs have not shown that they are similarly situated to persons being paid without an appropriation. Further, the two separate court proceedings are not comparable, and plaintiffs have not alleged that the state courts denied them equal protection.

¶ 79        The constitutional guarantee of equal protection requires the government to treat similarly situated individuals in a similar manner. *AFSCME*, 2015 IL App (1st) 133454, ¶ 30. The federal and state equal protection clauses are applied in the same way. *Id.* When neither a fundamental right nor a suspect class is at issue, the deferential rational basis test applies; the

---

[3]Defendants assert in a footnote that plaintiffs waived or failed to appeal their equal protection and due process claims, although defendants address both claims in their response brief. We note that plaintiffs discussed these claims to some degree in their opening brief and responded to defendants' arguments in plaintiffs' reply brief.

statute "must bear a rational relationship to a legitimate legislative purpose and cannot be arbitrary or unreasonable." *Id.* "Under rational basis review of a classification for purposes of disparate treatment, the law is presumed to be constitutional, and the state is not required to actually articulate the law's purpose or produce evidence to sustain the rationality of the classification. [Citation.] Instead, there is a weighty burden on the challenger, who must [negate] every basis which might support the law because it should be upheld if there is any reasonably conceivable set of facts supporting the classification." *Id.* ¶ 32. "Even a showing of animus is insufficient where there is an otherwise legitimate state purpose and a rational basis for its implementation." *Id.* ¶ 37.

¶ 80        We find that plaintiffs have failed to state a valid claim for violation of their equal protection rights. They have not "negat[ed] every basis which might support the law," and there are certainly rational reasons for the State to assure appropriations do not outstrip available revenues. When social or economic legislation is challenged, the rational basis test applies, and "courts will not invalidate legislation which is simply deemed unwise or inartfully drawn." *Miller v. Illinois Department of Public Aid*, 94 Ill. App. 3d 11, 19 (1981) (citing *United States R.R. Retirement Board v. Fritz*, 449 U.S. 166, 173-74 (1980)). So long as the classification has "some reasonable basis, it does not offend the constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if not require, rough accommodations." *Id.* at 19-20 (citing *Dandridge v. Williams*, 397 U.S. 471, 485 (1970)). "Where any plausible reasons for the legislature's action can be discerned, this court's inquiry ends." *Id.* at 20. See *Metropolitan Alliance of Police v. Illinois State Labor Relations Board*, 299 Ill. App. 3d 377 (1998) (conservation of state resources provides rational basis).

¶ 81   Here, in the midst of the ongoing budget impasse, the legislature and the Governor agreed upon Public Act 99-524 to provide at least some appropriations to fund governmental functions. Plaintiffs have not shown that they are similarly situated to groups who received full funding, if any, based on federal law mandate or due to the requirements of the Illinois Constitution.

¶ 82   We also find no disparate treatment between plaintiffs and the state employee plaintiffs in *AFSCME v. State*, 2015 IL App (5th) 150277-U. As noted, this unpublished order is not precedential. Further, the state employees in that case are being paid pursuant to a temporary restraining order, a procedural posture very distinct from the motion to dismiss at issue in this case, and the Fifth District case involved union contracts. In distinction, the present case involves Public Act 99-524, in addition to the plaintiffs' contracts containing the contingency clause previously discussed. The State argued in the Fifth District litigation, as they do here, that there is no impairment of contract for failure to pay amounts in the collective bargaining agreement. Plaintiffs do not allege that the courts have denied them equal protection. Any disparity in treatment cannot be attributed to intentional discrimination but is instead the result of two separate court proceedings in separate cases before circuit courts in different counties and different panels of the appellate court.

¶ 83            F. Due Process

¶ 84   Plaintiffs assert that the failure to appropriate sufficient funds for their contracts deprived them of a property right without due process because there is no legally principled rationale in determining the priority of payment.

¶ 85   Defendants contend that plaintiffs failed to allege the deprivation of a property interest or denial of any process due and the remedy they seek is not available for a due process violation.

¶ 86      "The government cannot deprive a person of life, liberty, or property without due process of law." *AFSCME*, 2015 IL App (1st) 133454, ¶ 13 (citing U.S. Const., amend. XIV, and Ill. Const. 1970, art. I, § 2). "Procedural due process requires that when a constitutional right is at stake, the person whose right is at issue is entitled to notice and a meaningful opportunity to be heard." *Id.* "The due process guarantee considers economic legislation under the same 'rational basis' standard, which requires that the legislation in question bear a reasonable relationship to a public interest and that the means adopted are reasonable in accomplishing that public objective." *McLean v. Department of Revenue of State of Illinois*, 184 Ill. 2d 341, 354 (1998).

¶ 87      Here, as previously discussed at length, *supra*, the contracts were explicitly subject to appropriations, and therefore failure of this contingency could not deprive them of a property right. Further, even assuming plaintiffs had a property interest in receiving payments under their contracts, the legislative process of making appropriations provides them with all the process they are due. Even if refusal to pay on the contracts constituted a breach of contract, this would not also transform into a deprivation of due process. Plaintiffs have a procedure available to them by which they could pursue their rights, *i.e.*, an action in the Court of Claims.

¶ 88                      III. CONCLUSION

¶ 89      For the reasons stated, we affirm the circuit court's dismissal of plaintiffs' third amended complaint.

¶ 90      Affirmed.