In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 17-2480

NANETTE TUCKER,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-01894 — **Robert M. Dow, Jr.**, *Judge.*

———————

ARGUED SEPTEMBER 17, 2018 — DECIDED OCTOBER 19, 2018

———————

Before EASTERBROOK, KANNE, and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Does a six month delay between a property inspection and notice of a municipal ordinance citation violate due process? The district court said no, dismissing plaintiff-appellant Nanette Tucker's amended complaint for failure to state a procedural due process claim under 42 U.S.C. § 1983. It also rejected her alternative theory that the City of Chicago misinterpreted the ordinance's plain text.

We affirm. The administrative and judicial proceedings available for Tucker to challenge her citation satisfied due process, and the accuracy of the city's interpretation of its ordinance does not implicate the U.S. Constitution. Given Tucker's failure to allege facts supporting a plausible violation of her due process rights, dismissal under Federal Rule of Civil Procedure 12(b)(6) was appropriate.

## I.    BACKGROUND[1]

Chicago sells vacant real estate to local residents for $1 per lot through its "Large Lot Program."[2] As the city council explained, "Many of the City-owned parcels are of minimal value, yet are costly for the City to clean up and maintain." CHI. MUN. CODE § 2-157-010. Under the program, in February 2015, Tucker purchased a vacant lot on her neighborhood block, intending to convert it into a community garden.

Defendant Sonya Campbell works as an inspector for Chicago's Department of Streets and Sanitation. On June 3, 2015, she inspected Tucker's property and concluded its vegetation violated the city's yard weed ordinance, CHI. MUN. CODE § 7-28-120(a), which provides:

---

[1] These facts come from Tucker's amended complaint and the certified administrative record of the Chicago Department of Administrative Hearings. As the district court noted, matters of public record—such as a public administrative hearing—may be judicially noticed without converting a motion to dismiss into one for summary judgment. FED. R. EVID. 201(b); *see also Ray v. City of Chicago*, 629 F.3d 660, 665 (7th Cir. 2011).

[2] *See* Amendment Adding New Chapter 157 Establishing Large Lot Program, Chi. City Coun. Rec. No. O2014-9405 (Dec. 10, 2014), https://chicago.legistar.com/Legislation.aspx (search record number O2014-9405).

> Any person who owns or controls property within the city must cut or otherwise control all weeds on such property so that the average height of such weeds does not exceed ten inches. Any person who violates this subsection shall be subject to a fine of not less than $600 nor more than $1,200. Each day that such violation continues shall be considered a separate offense to which a separate fine shall apply.

During Campbell's inspection, she took two photographs of the lot from the street to depict the overgrown vegetation. No citations or notices regarding Campbell's inspection or its results were posted at the property.

Six months later, on December 4, 2015, another city employee served Tucker (via first class mail) with a citation for the alleged June 3 violation. The citation included a certification by Campbell and the description, "Weeds are greater than 10 inches in height." It also notified Tucker she could appear at a hearing before the end of the month to contest the violation in front of an administrative law judge.[3]

Tucker, represented by counsel, attended the hearing. The city's case-in-chief consisted of the citation and inspector Campbell's two photographs. Tucker's counsel moved to dismiss the citation, claiming the city failed to present evidence of the "average height" of the weeds. The administrative law judge denied that motion, spurring Tucker's counsel to raise a series of constitutional challenges to the ordinance

---

[3] Under Illinois law, 65 ILL. COMP. STAT. 5/1–2.1–2 (1998), municipalities may create an administrative adjudication system for ordinance violations, which Chicago has done. CHI. MUN. CODE § 2-14-010 (2012).

and its enforcement by the city. The administrative law judge stated he was not authorized to rule on any constitutional matters, but permitted Tucker's counsel to make a record for purposes of appeal.

Next, Tucker took the witness stand and testified she made it her practice to have the property "cut and cleaned" every other week. She stated she passes her lot every day but has never seen vegetation greater than an average of ten inches, and no neighbors have ever complained about its condition. Besides her own testimony, Tucker presented no other evidence to the administrative law judge.

After arguments from counsel, the administrative law judge ruled in favor of the city and imposed a $640 fine against Tucker. Tucker could have appealed the fine to the Circuit Court of Cook County,[4] but instead she paid it "under protest." That same day, she filed this putative class action, alleging 42 U.S.C. § 1983 claims against Campbell (in her individual capacity) and the city (pursuant to *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978)), as well as a "failure-to-train" claim against the city.

After the defendants filed a Rule 12(b)(6) motion, the district court dismissed Tucker's original complaint but granted her leave to re-plead. Tucker filed an amended complaint, but the district court dismissed that as well, ruling the facts alleged failed to state a plausible claim that the defendants

---

[4] An administrative law judge's decision is appealable to Illinois's circuit courts under the Illinois Administrative Review Law. CHI. MUN. CODE § 2-14-102 (1998); 65 ILL. COMP. STAT. 5/1–2.1–7 (1998); 735 ILL. COMP. STAT. 5/3–104 (1994).

deprived Tucker of due process. Rather than amend her complaint yet again, Tucker chose to pursue this appeal.

## II.   ANALYSIS

We review *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss, accepting as true all well-pleaded facts and drawing all reasonable inferences in the plaintiff's favor. *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017). Section 1983 claims are subject to the same plausibility pleading standard as other civil causes of action. *See, e.g., McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

The two elements of a procedural due process claim are "(1) deprivation of a protected interest and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008) (citation omitted). Here, the parties agree the fine deprived Tucker of a protected property interest. At issue is whether the facts she alleged plausibly demonstrate constitutionally deficient procedural protections.

### A. *Availability of Post-Deprivation Relief in State Court*

Before reaching Tucker's main contentions, we reject her argument that the district court erred in considering her appeal rights under Illinois law. Relying on *Zinermon v. Burch*, 494 U.S. 113 (1990), and *Parratt v. Taylor*, 451 U.S. 527 (1981), Tucker contends post-deprivation remedies may be considered only where the deprivation is the result of "random and unauthorized" acts by individual government agents. Tucker's argument mischaracterizes the rule laid down in *Parratt* and distinguished in *Zinermon*.

In *Parratt*, the Supreme Court held the government did not offend due process by failing to provide an inmate with a hearing before prison officials inadvertently lost his property in the mail. Such a hearing would have been impossible to schedule given it was the result of a "random and unauthorized act." 451 U.S. at 541–44. *Parratt* explained that the general preference for a pre-deprivation hearing does not control where the government is unable to foresee the deprivation and provides adequate post-deprivation remedies. *Id.* at 544. By contrast, the Court in *Zinermon* ruled state tort remedies insufficient because the government could have foreseen that holding a hearing before committing a person to a mental health facility would avoid erroneous commitments. 494 U.S. at 136–37.

These cases address whether post-deprivation remedies *standing alone* satisfy due process, in the absence of any pre-deprivation hearing. Here, Tucker received both a pre-deprivation hearing and an avenue to seek post-deprivation relief through judicial review. While *Parratt* holds that post-deprivation remedies may be sufficient if the deprivation is "random and unauthorized," neither *Parratt* nor *Zinermon* stands for the proposition that post-deprivation remedies are otherwise irrelevant to a procedural due process claim. Rather, the adequacy of pre-deprivation proceedings may turn on the availability and nature of post-deprivation remedies. *See Parratt*, 451 U.S. at 541 (noting precedents excusing pre-deprivation hearings "have rested in part on the availability of some meaningful opportunity subsequent to the initial taking for a determination of rights and liabilities"); *see also Michalowicz*, 528 F.3d at 536–37 ("[W]hen adequate post-termination proceedings exist, a pretermination hearing need

only provide an initial check against mistaken decisions … .")
(quotation omitted).

As Tucker points out, a plaintiff need not exhaust her
remedies through state agencies or courts before bringing a
§ 1983 claim. *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937,
941 (7th Cir. 2003). But that is not to say post-deprivation rem-
edies are *irrelevant* to a procedural due process claim. *Id*.
(noting that the "whole idea of a procedural due process claim
is that the plaintiff is suing because the state failed to provide
adequate remedies"); *see also Dusanek v. Hannon*, 677 F.2d 538,
543 (7th Cir. 1982) ("[A] state cannot be held to have violated
due process requirements when it has made procedural pro-
tection available and the plaintiff has simply refused to avail
himself of them."). Indeed, a plaintiff who foregoes her right
to pursue post-deprivation remedies available under state
law faces a high hurdle in establishing a due process viola-
tion. *See Simmons v. Gillespie*, 712 F.3d 1041, 1044 (7th Cir.
2013) ("The due process clause does not permit a litigant to
disdain his opportunities under state law and then demand
that the federal judiciary supply a remedy."). Such remedies
go directly to the question whether a plaintiff has been
afforded due process of law. Thus, the district court was
correct to consider Tucker's right to pursue judicial review in
state court.

### B. Delay Theory

Now we turn to Tucker's primary argument that the city's
six month delay in notifying her of the yard weed citation
denied her due process.

Tucker does not dispute that she received a hearing, in
which she was represented by counsel, presented evidence in

her defense, and made legal arguments. On its face, such a hearing embodies the "fundamental requirement of due process." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also Pugel v. Bd. of Tr. of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004) ("The hallmarks of procedural due process are notice and an opportunity to be heard.").

Recognizing this, Tucker frames her claim as "a *prehearing* denial of due process." (Appellant's Brief at 17 (emphasis added).) Yet this theory suffers from a fundamental flaw: the city did not deprive Tucker of anything until the December 29, 2015 hearing in front of the administrative law judge. Before then, the city had simply issued her a citation. Only at the hearing did the administrative law judge consider the parties' evidence, adjudicate the city's allegation, and impose a fine. A plaintiff cannot be deprived of property without due process of law before that plaintiff is deprived of property. *See DeHart v. Town of Austin*, 39 F.3d 718, 724 (7th Cir. 1994) (due process claim held premature because no deprivation had occurred yet); *see also Lawshe v. Simpson*, 16 F.3d 1475, 1478–80 (7th Cir. 1994) (due process claim accrues upon actual deprivation not notice of threatened deprivation). Therefore, the delay between Campbell's inspection and the citation is relevant only to whether the hearing itself was constitutionally adequate. The delay alone does not constitute a due process violation.

Supreme Court precedent provides that statutes of limitation are the primary line of defense against prosecutorial delay, *Betterman v. Montana*, 136 S. Ct. 1609, 1613 (2016), but Chicago's yard weed ordinance does not have one. *Discount Inn, Inc. v. City of Chicago*, 803 F.3d 317, 327 (7th Cir. 2015)

(rejecting constitutional challenge to Chicago weed and fencing ordinances based on lack of limitations period).

Yet the Supreme Court has also held that due process has "a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789 (1977). Such violations occur only where the delay "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions … and which define the community's sense of fair play and decency." *Id.* at 790 (quotations omitted). An accused must demonstrate "actual and substantial prejudice," at which point the burden shifts to the government to show the reason for its delay was not improper. *United States v. Henderson*, 337 F.3d 914, 920 (7th Cir. 2003); *see also United States v. Sowa*, 34 F.3d 447, 450–51 (7th Cir. 1994) (discussing burden shifting). To demonstrate actual and substantial prejudice, "[I]t is not enough to show the mere passage of time nor to offer some suggestion of speculative harm; rather, the defendant must present concrete evidence showing material harm." *Wilson v. McCaughtry*, 994 F.2d 1228, 1234 (7th Cir. 1993) (quotation omitted).

Tucker asserts the city's delay caused her prejudice in that she was unable "to make any measurements of the average height of the vegetation on her lot at or near the time of inspection" or to use "photographs taken contemporaneously with the date of the alleged violation." (Amended Complaint ¶¶ 29, 64.) Such allegations do not plausibly demonstrate actual and substantial prejudice. Every prosecution necessarily occurs after the alleged violation. Many defendants wish they had access to non-existent, contemporaneous evidence to use in their defense, but this "does not render the hearing meaningless" for purposes of due process. *Cochran v.*

*Illinois State Toll Highway Auth.*, 828 F.3d 597, 601 (7th Cir. 2016).

As this court has recognized, "Due process does not require notice-on-demand but rather timely notice, and a one month delay in receiving notice does not offend due process." *Id.* at 601. Although the delay in this case is six months, it is still considerably shorter than prosecutorial delays accepted in other contexts. *See, e.g., United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555, 569–70 (1983) (18 month delay in initiating forfeiture proceedings did not violate due process); *Wilson*, 994 F.2d at 1234–36 (deaths of potential witnesses during a 16 year delay were insufficient to demonstrate substantial prejudice); *Sowa*, 34 F.3d at 449–52 (no due process violation despite four year delay in bringing federal hate crime prosecution). And the interest at stake here is monetary, less significant than (for example) one's liberty interest in a criminal prosecution, or even property interest in continued employment. *See Clancy v. Office of Foreign Assets Control*, 559 F.3d 595, 600 (7th Cir. 2009). Substantial prejudice hardly arises more quickly for a municipal ordinance citation than felony prosecutions.

Accepting Tucker's prejudice argument would place a near instantaneous notice mandate on the city. Even if Tucker received her citation the day after Campbell's inspection and quickly photographed her yard from her preferred angles, such evidence would be less probative than photographs taken on the day of the alleged violation, as the weeds could have withered or been cut.

Moreover, the issue is not whether it might be "helpful" if alleged violators were provided with notice more quickly, but whether the existing procedures "present an unreasonable

risk of an erroneous deprivation." *Clancy*, 559 F.3d at 600. As the district court highlighted, Tucker was still permitted to testify on her own behalf and present whatever existing evidence she wanted. She was free to impeach the city's photographs to illustrate any alleged deficiencies. Although it is conceivable that Tucker may have been able to mount a better defense had she known immediately of the June 3 citation, the hearing she received did not present an unreasonable risk of an erroneous deprivation. *Id.* at 601 (holding that "pre-penalty notice of the basis for [a] charge, the underlying facts, and an opportunity to respond" is an "appropriate procedure" for mitigating the risk of an erroneous deprivation).

Because Tucker has neither pointed us to any authority suggesting that law enforcement must initiate a prosecution immediately, nor demonstrated actual and substantial prejudice, she has failed to plausibly allege a due process claim based on the six months between the inspection of her property and issuance of the citation.

### C. "Misenforcement" Theory

Tucker also argues the defendants maintain a policy of misinterpreting (or "misenforcing," as Tucker puts it) the city's yard weed ordinance. She asserts the city incorrectly asks its inspectors to determine only whether some weeds exceed ten inches, while the plain text of the ordinance requires that "the average height" of the offending weeds exceed ten inches.

But an alleged misinterpretation of a municipal ordinance does not implicate the U.S. Constitution. *See Herbert v. Louisiana*, 272 U.S. 312, 316–17 (1926) ("The due process of law clause in the Fourteenth Amendment does not take up the

statutes of the several states and make them the test of what it requires … .”); *Snowden v. Hughes*, 321 U.S. 1, 11 (1944) (“Mere violation of a state statute does not infringe the federal Constitution.”); *Swarthout v. Cooke*, 562 U.S. 216, 221–22 (2011) (same); *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (“A state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law.”). Interpretation of state or local law is a question of legal substance, not process. A litigant is not deprived of due process merely because a local law enforcement agency does not agree with her legal interpretation. *Simmons*, 712 F.3d at 1044 (“[T]he federal entitlement is to process, not to a favorable outcome.”).

As this court stated in *Kompare v. Stein*, 801 F.2d 883 (7th Cir. 1986):

> The constitutionality of the defendant's conduct cannot be determined by looking to a municipal ordinance. Section 1983 only creates a federal cause of action against those acting under color of state law who cause a deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States.
>
> … Violations of state statutes or municipal ordinances do not necessarily give one a cause of action under § 1983, nor do they necessarily state a violation of the due process clause.

*Id.* at 888 (quotations and emphasis omitted).

Even assuming Tucker is right that the city's interpretation of its ordinance is incorrect, federal due process

protection is not a guarantee that state governments will apply their own laws accurately. *Simmons*, 712 F.3d at 1044 ("The Constitution does not require states to ensure that their laws are implemented correctly."); *see also Coniston Corp. v. Vill. of Hoffman Estates*, 844 F.2d 461, 467 (7th Cir. 1988) (holding that a village board's alleged misapplication of a municipal zoning ordinance did not present a due process concern). Were the rule otherwise, federal courts would sit effectively as appellate tribunals over every state proceeding. *See Gryger v. Burke*, 334 U.S. 728, 731 (1948) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.").

If Tucker believed the administrative law judge's interpretation of the ordinance was legally incorrect, she could have appealed her fine to Illinois's state courts. Her amended complaint makes no attempt to establish the inadequacy of that avenue of redress. *Michalowicz*, 528 F.3d at 535 (noting that a plaintiff must demonstrate that the existing state law remedy is "inadequate to the point that it is meaningless or nonexistent"). Without such factual allegations, the district court correctly rejected Tucker's "misenforcement" theory.

Finally, Tucker acknowledges that her "failure-to-train" claim against the city is "not a free-standing claim" and depends on the viability of her theories discussed above, so we need not address it separately. And because we agree with the district court that Tucker failed to plead any plausible due process violation, it is unnecessary to reach the district court's decision regarding Campbell's qualified immunity defense.

### III.   CONCLUSION

Although a six month delay between inspection and citation may not be a model of administrative efficiency, the delay in this case did not violate the Constitution. Similarly, the proper interpretation of a municipal ordinance is a matter of local law for state courts to decide, not constitutionally required procedure.

AFFIRMED.