In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3315

LOUIS WOZNIAK,

*Plaintiff-Appellant,*

*v.*

ILESANMI ADESIDA, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 15-cv-2275 — **Colin S. Bruce**, *Judge.*

ARGUED MAY 15, 2019 — DECIDED AUGUST 6, 2019

Before WOOD, *Chief Judge*, and EASTERBROOK and
HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge*. The University of Illinois
fired Louis Wozniak in 2013. Until then he had tenure on the
faculty of the College of Engineering. But after Wozniak
waged an extended campaign against students who did not
give him an award, the University's Board of Trustees decid-
ed that he had violated the institution's norms and rules, in-
cluding the need to treat students with respect. As he had

done before when the University insisted that he follow school policies, Wozniak responded with a federal lawsuit. He lost the last time, see *Wozniak v. Conry*, 236 F.3d 888 (7th Cir. 2001), and loses this time too.

The district court's lengthy opinion granting summary judgment to the defendants, 368 F. Supp. 3d 1217 (C.D. Ill. 2018), sets out all the pertinent facts, and then some, so we can be brief. Two student honor societies at the College of Engineering jointly give an annual teaching award. In spring 2009 they presented the award to Professor Ali E. Abbas. Wozniak thought that he should have received the award and set out to investigate. He called the head of one honor society to his office, aggressively interrogated her, got her to cry, and repeated the process with one of the University's employees (who did not cry but was distressed). He then posted on his website information criticizing the student heads of the honor societies and enabling readers to determine their identities. That violated the University's policies as well as conditions attached to the University's federal grants. 20 U.S.C. §1232g(b).

The College's Dean started tenure-revocation proceedings. The University's Committee on Academic Freedom and Tenure investigated, held hearings, and received submissions from the Interim Chancellor and Wozniak. The Committee concluded that Wozniak had engaged in several kinds of misconduct but that loss of tenure would be an excessive response. The University's President presented the matter to the Board of Trustees, which held ultimate authority. It conducted its own hearing, including live testimony and cross-examination. Disagreeing with the Committee, the Board thought Wozniak's conduct a firing offense.

One reason for the difference in opinion is what Wozniak did after the Committee issued its report: he posted the entire document, and all evidence the Committee received, on his website, revealing the identities of the students involved and the distress they felt at Wozniak's conduct. He included a link to this material in the signature block of every email he sent from his University account. Wozniak did this after the Committee informed him that disseminating identifying information about the students would be grounds for dismissal. Told by the Dean to remove this material, Wozniak refused. Inconsiderate and insubordinate is the most charitable description one can attach to this conduct.

Before the Committee's hearing, Wozniak had sought to interrogate the students further about the circumstances leading to the award. After they refused to speak with him, Wozniak filed a civil suit in state court seeking damages from them. He concedes that the sole reason for filing this suit was to get a judicial order requiring the students to sit for depositions, and that he planned to dismiss the suit as soon as that had been done. In other words, Wozniak concedes committing a tort against the students. (The tort is abuse of process.) In the event, the state judge dismissed the suit as frivolous before depositions occurred.

The Board concluded that students should not be treated as Wozniak had done and that students' educational lives would be better without him on the faculty. Wozniak does not contend that the Board's decision violated his tenure contract; instead he accuses the University of violating the Constitution of the United States.

His lead argument is that the First Amendment (applied to the states through the Fourteenth) entitles faculty mem-

bers to make available to the public any information they please, no matter how embarrassing or distressful to students. This argument, even if correct, would not carry the day for him: he was fired for intentionally *causing* hurt to students, and refusing to follow the Dean's instructions, not simply for publicizing the effects of his actions. What's more, the argument is not correct.

Wozniak acted in his capacity as a teacher. The subject of the award was teaching; he called students into his faculty office (a power he possessed by virtue of his job) and used his position to inflict the injuries that precipitated his discharge. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), holds that the First Amendment does not govern how employers respond to speech that is part of a public employee's job. Wozniak tells us that his conduct was not part of his duties, and in a sense this is right: it did not concern how he ran his classroom, graded exams, assisted students in conducting experiments or writing papers, or conducted his own research and scholarship. Those are core academic duties. Yet how faculty members relate to students *is* part of their jobs, which makes *Ceballos* applicable. See *Brown v. Chicago Board of Education*, 824 F.3d 713, 715 (7th Cir. 2016). Professors who harass and humiliate students cannot successfully teach them, and a shell-shocked student may have difficulty learning in other professors' classes. A university that permits professors to degrade students and commit torts against them cannot fulfill its educational functions.

There is another route to the same conclusion. Speech that concerns personal job-related matters is outside the scope of the First Amendment, even if that speech is not among the job's duties. See, e.g., *Connick v. Myers*, 461 U.S.

138 (1983). Whether an award by two student societies (accompanied by $500 and a plaque) went to Abbas or to Wozniak may have been important to Wozniak, but it is not a matter of public concern. Employers can insist that such matters of personnel administration be handled confidentially, using the employer's preferred means. See, e.g., *Bivens v. Trent*, 591 F.3d 555, 560–62 (7th Cir. 2010). By humiliating students as a matter of self-gratification and persisting in defiance of the Dean's instructions, Wozniak left himself open to discipline consistent with the Constitution.

Wozniak's second argument is that the Board violated the Due Process Clause of the Fourteenth Amendment. Tenured professors at public universities have property interests in their jobs and are entitled to notice and an opportunity for a hearing before they may be deprived of that interest. Compare *Board of Regents v. Roth*, 408 U.S. 564 (1972), with *Perry v. Sindermann*, 408 U.S. 593 (1972). But the Dean gave Wozniak formal notice, and he then had two hearings—one before the Committee and one before the Board. At each he was represented by counsel and allowed to call witnesses and present argument. He was entitled as well to an impartial decisionmaker, see *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009); *Peters v. Kiff*, 407 U.S. 493 (1972), and the University honored that entitlement: Wozniak does not contend that any member of the Board was biased or otherwise disqualified. He does complain about one member of the Committee, but its recommendation was favorable to him, and it was also not the decisionmaker.

We have said enough to show that the due-process claim must be resolved in the University's favor. Wozniak contends that the Committee and Board did not follow all of the

University's rules and regulations for tenure-revocation proceedings, but this has nothing to do with the Constitution. The meaning of the Due Process Clause is a matter of federal law, and a constitutional suit is not a way to enforce state law through the back door. See, e.g., *Snowden v. Hughes*, 321 U.S. 1, 11 (1944); *Davis v. Scherer*, 468 U.S. 183, 192–96 (1984); *Archie v. Racine*, 847 F.2d 1211, 1215–18 (7th Cir. 1988) (en banc); *Tucker v. Chicago*, 907 F.3d 487, 494–95 (7th Cir. 2018) (citing other decisions). (Wozniak could not use federal litigation to enforce state law directly against a part of the state, see *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 103–23 (1984).) Wozniak complains that the Board did not permit him to call every witness he wanted to present. But the Due Process Clause does not regulate the hearing's every detail. Even in federal court—indeed, even in a criminal prosecution, where procedural protections are at their maximum—the judge may exclude proffered evidence as irrelevant or cumulative, see Fed. R. Evid. 402, 403, or for other reasons laid out in the Rules of Evidence.

The Board received the Committee's report and its lengthy evidentiary record and heard enough additional testimony to permit it to make an intelligent decision. The Constitution does not require the Board to take testimony from the Committee's members. (Again this is not required, indeed usually is not allowed, in court, where judges make decisions based on administrative records without receiving decisionmakers' testimony. See, e.g., *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).) Likewise it is irrelevant who prepared initial drafts of the opinions for the Committee or the Board. The members of the Federal Communications Commission do not necessarily draft their own opinions (neither do all federal judges), but this does

not open them to constitutional attack. The University went well beyond the constitutional minimum.

Wozniak's remaining arguments do not require discussion.

AFFIRMED