2022 IL App (1st) 1210792

SIXTH DIVISION
December 9, 2022

No. 1-21-0792

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| VILLAGE OF WILMETTE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellant and | ) | Cook County. |
| Cross-Appellee, | ) | |
| | ) | No. 2015 CH 05403 |
| v. | ) | |
| | ) | Honorable |
| MARSHALL SPIEGEL and CHICAGO TITLE TRUST | ) | Brigid Mary McGrath, |
| COMPANY, as Trustee of Trust No. 4179, | ) | Thomas R. Mulroy, Jr., and |
| | ) | James E. Snyder, |
| Defendants and Counterplaintiffs-Appellees and | ) | Judges Presiding. |
| Cross-Appellants. | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Walker and Tailor concurred in the judgment.

**O R D E R**

¶ 1    *Held*:    The circuit court's grant of summary judgment in favor of the defendants on their counterclaim alleging a procedural due process violation is reversed; the circuit court's grant of summary judgment in favor of the plaintiff on the defendants' four other counterclaims is affirmed; the circuit court order awarding attorney fees is vacated.

¶ 2    This appeal involves a long-running dispute between the Village of Wilmette (the Village) and resident Marshall Spiegel which began in 2014 when the Wilmette Fire Department notified Mr. Spiegel that he did not have an adequate fire alarm system installed in his multi-unit rental

property. After Mr. Spiegel failed to install a compliant system by the Village's imposed deadline, the Village served him with an ordinance citation.

¶ 3    A week before his court date on the ordinance citation, Mr. Spiegel filed a separate complaint in the circuit court seeking a declaration that he was exempt from the ordinance the Village claimed he was violating. In response to Mr. Spiegel's suit, the Village non-suited its ordinance violation case and filed its own declaratory suit, seeking significant fines and an order requiring Mr. Spiegel to come into compliance. Mr. Spiegel asserted several counterclaims in response to the Village's declaratory suit, alleging that the Village's actions violated his constitutional rights. Both sides moved for summary judgment.

¶ 4    The circuit court entered summary judgment in favor of Mr. Spiegel on one of his five counterclaims, where he had alleged a procedural due process violation. In the same order, the court entered summary judgment in favor of the Village on Mr. Spiegel's four other counterclaims. In subsequent proceedings, the court awarded Mr. Spiegel $15,000 in attorney fees.

¶ 5    For the following reasons, we reverse the circuit court's award of summary judgment in favor of Mr. Spiegel on his procedural due process counterclaim and remand to the circuit court to enter summary judgment on that counterclaim in favor of the Village. We also affirm the circuit court's grant of summary judgment in favor of the Village on Mr. Spiegel's four other counterclaims and reverse and vacate the circuit court's order awarding Mr. Spiegel attorney fees, since it was predicated on his being the prevailing party on the procedural due process counterclaim.

¶ 6                                  I. BACKGROUND

¶ 7    Marshall Spiegel is the owner of a 24-unit rental property in the Village, located at 1116-1122 Greenleaf Avenue. Legal title to the property is held by the other defendant and

counterplaintiff in this suit, Chicago Title Trust Company, as Trustee of Trust No. 4179, a land trust over which Mr. Spiegel possesses 100% of the interest and sole power of direction. As Mr. Spiegel holds 100% of the interest in the trust and sole power of direction over the trustee, we will refer to the defendants/counterplaintiffs, Mr. Spiegel and Chicago Title Trust Company, collectively as "Mr. Spiegel" throughout this order.

¶ 8     On March 19, 2014, Mr. Spiegel was notified by an inspector with the Wilmette Fire Department's Fire Prevention Bureau that his fire alarm system was not up to code. The Village's Code of Ordinances incorporates the National Fire Prevention Association's Life Safety Code (Life Safety Code), a set of widely used fire safety standards which require that apartment buildings with more than three stories or with more than 11 units have a fire alarm system that meets certain specifications. The inspector alleged in his violation notice that Mr. Spiegel's property did not comply with these specifications. Mr. Spiegel was warned in the violation notice that he must "submit a plan to have an alarm system installed by September 15, 2014." Mr. Spiegel did not submit an installation plan to the fire department for review by the deadline and, on October 14, 2014, the Village's Chief Enforcement Officer sent Mr. Spiegel a letter notifying him that the Village would be issuing him a non-traffic ordinance citation which would require his appearance in the municipal department of the circuit court on November 7, 2014.

¶ 9     Prior to that scheduled court date, on October 31, 2014, Mr. Spiegel filed a separate lawsuit against the Village in the chancery division of the circuit court. In his one-count complaint, Mr. Spiegel alleged that the Village was "threatening him" with fines and code violations. Citing a subsection of the Life Safety Code which he alleged exempted buildings like his from the fire alarm requirement, he sought injunctive relief, attorney fees, and a declaration that he was not obligated to install an alarm system on his property.

¶ 10    On December 5, 2014, the Village non-suited its ordinance violation case. It advises this court, in its opening brief, that it made this decision to avoid having to litigate the matter in two separate venues. On March 31, 2015, it then filed its own two-count complaint in the chancery division, alleging that Mr. Spiegel's property was in violation of the Life Safety Code. Count I sought an order compelling him to come into compliance and count II sought $283,500 in fines, representing $750 per day for the more than 365 days between when Mr. Spiegel was first notified of the violation and the date the Village filed its suit. On May 19, 2015, the circuit court issued an order consolidating Mr. Spiegel's and the Village's declaratory actions.

¶ 11    While that now-consolidated litigation was pending, Mr. Spiegel installed an alarm system on the property. This new alarm system passed an inspection by Village authorities on October 16, 2015.

¶ 12    On August 8, 2017, Mr. Spiegel responded to the Village's complaint with an amended answer, affirmative defenses, and counterclaim. He asserted five counts against the Village for a range of constitutional violations under section 1983 of the federal Civil Rights Act (42 U.S.C. § 1983 (2012)). Specifically, Mr. Spiegel asserted that the Village's tactics amounted to (1) a violation of his right to equal protection under the fourteenth amendment, (2) the levying of an unjust and "excessive fine" in violation of the eighth amendment, (3) retaliation in violation of the first amendment, (4) a violation of his procedural due process rights under the fourteenth amendment, (5) and a violation of his substantive due process rights under the fourteenth amendment. He also filed a demand for a jury trial.

¶ 13    On November 13, 2018, the morning the cause was set for trial, Mr. Spiegel moved to voluntarily dismiss his own complaint for declaratory judgment. The parties then filed cross-motions for summary judgment on the Village's complaint and Mr. Spiegel's counterclaims.

¶ 14    The parties argued those cross-motions on September 24, 2019. The court began its oral ruling at the end of that argument with the procedural due process counterclaim, stating that it was "granting Mr. Spiegel's motion for summary judgment and denying the Village of Wilmette's cross-motion with regard to the *** procedural due process." When counsel for the Village interjected that the fines sought had only been alleged, not imposed, the court responded, "Wilmette is attempting to impose hundreds of thousands of dollars of fines for days that Mr. Spiegel was allegedly not in compliance before Mr. Spiegel has had an opportunity to defend himself or to be heard as to whether or not, in fact, he was or was not in compliance. And I think that's where the due process considerations come into play."

¶ 15    The court then granted the Village's motion for summary judgment and denied Mr. Spiegel's with respect to Mr. Spiegel's four other counterclaims.

¶ 16    Once Mr. Spiegel's counterclaims were dealt with, counsel for the Village asked, "[s]o as far as the village's complaint for which Mr. Spiegel is seeking summary judgment, Counts I and II, how's the Court treating those counts?" The court answered that Mr. Spiegel was entitled to summary judgment on count I of the Village's complaint (seeking equitable relief) because Mr. Spiegel had taken it upon himself to install a compliant system that had subsequently passed inspection and thus there was now "no genuine issue of material fact that he is now in compliance." As to count II of the Village's complaint, seeking fines for Mr. Spiegel's alleged violation, the court reiterated that the Village could not "seek fines until and unless he's had due process *** And [Mr. Spiegel] hadn't had his due process. So the 280-some thousand dollars in fines can't be sought." Seeking further clarification, counsel for the Village then asked, "[s]o is it this Court's ruling that by sustaining the procedural due process claim that the village's request for fines is essentially zeroed out?" The circuit court responded, "[y]es." "So in other words," counsel stated,

"neither party is entitled to any relief at this time." The court responded, "[e]xactly."

¶ 17    At the end of the hearing, Mr. Spiegel's counsel asked for leave to file an attorney fee petition. The court did not deny him permission to file it, but stated, "I don't think that either party was a clear winner here." The court memorialized its rulings in a handwritten order.

¶ 18    A few days later, on September 27, 2019, the circuit court clarified its summary judgment rulings by signing a typed order prepared by Mr. Spiegel's attorney, which clearly stated that "on September 24, 2019, the Court granted Spiegel's Motion for Summary Judgment on Wilmette's Count I (Declaratory Judgment) and Count II (Injunction)." The order also stated that it had granted summary judgment in favor of the Village on all Mr. Spiegel's counterclaims save his procedural due process claim, which it entered in favor of Mr. Spiegel and against the Village.

¶ 19    The judge who issued the summary judgment order and its clarification, Judge Brigid Mary McGrath, retired days later and the case was reassigned to Judge Thomas R. Mulroy Jr. Both sides filed motions to reconsider the circuit court's summary judgment order, which were denied by Judge Mulroy Jr. on November 22, 2019. In the same order denying the motions to reconsider, Judge Mulroy Jr. also denied without prejudice a motion for substitution of judge that had been filed by Mr. Spiegel.

¶ 20    On December 2, 2019, Mr. Spiegel filed a motion petitioning the court for an award of attorney fees pursuant to section 1988(b) of the federal Civil Rights Act (42 U.S.C. § 1988(b) (2000)), arguing that he was entitled to fees because he had prevailed on his procedural due process counterclaim. On December 12, 2019, Judge Mulroy Jr. apparently reconsidered his previous denial of Mr. Spiegel's motion for substitution and the case was reassigned to Judge James E. Snyder, who has presided over the matter ever since.

¶ 21    Mr. Spiegel's petition for fees was still pending when, on December 20, 2019, he timely

filed notice of appeal as to the circuit court's summary judgment order. The Village filed its own notice of appeal as to the summary judgment order on December 23, 2019.

¶ 22 On June 9, 2021, Judge Snyder entered an order awarding Mr. Spiegel $15,000 in fees. Both parties appealed the fee award.

¶ 23                              II. JURISDICTION

¶ 24 Mr. Spiegel timely filed a notice of appeal as to the June 9, 2021, order awarding him attorney fees on July 7, 2021. The Village appealed the same order on July 8, 2021. The appeals on the summary judgment order and the denial of the motions to reconsider that order have been consolidated into this appeal. We have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 25                              III. ARGUMENT

¶ 26 The primary issue in this appeal is whether the circuit court erred in its summary judgment rulings on Mr. Spiegel's counterclaims. Secondarily, we must also determine whether Mr. Spiegel was entitled to an award of attorney fees.

¶ 27 In its original opening brief, filed on October 16, 2020, the Village urged us to find not only that the circuit court erred in granting summary judgment in favor of Mr. Spiegel on his procedural due process counterclaim, but also that it erred in granting Mr. Spiegel's motion for summary judgment as to the Village's two-count complaint. In subsequent filings before this court, however, the Village has abandoned this request relative to its own complaint. In its supplemental combined brief, filed on August 10, 2022, the Village stated its position as follows: "[t]he Village is seeking to vacate Judge McGrath's finding in favor of Marshall Spiegel in regard to his counterclaim alleging a violation of due process. That is the sole subject of the Village's main

appeal [citations]. Otherwise, the Village requests that those orders be affirmed in all respects." We take the Village at its word. Our analysis here will focus exclusively on the issues presented by Mr. Spiegel's counterclaims and we consider abandoned the issue of whether the circuit court erred in granting Mr. Spiegel summary judgment on the Village's two-count complaint.

¶ 28    "Summary judgment is proper when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Bremer v. City of Rockford*, 2016 IL 119889, ¶ 20 (quoting 735 ILCS 5/2-1005(c) (West 2008)). Where, as here, the parties filed cross-motions for summary judgment, "they agree that only questions of law are involved and invite the court to decide the issues based on the record." *Id.* Our review of the circuit court's order is *de novo*. *Id.*

¶ 29                              A. Mr. Spiegel's Procedural Due Process Claim

¶ 30    As our supreme court explained in *People v. Deleon*, 2020 IL 124744, ¶ 7, "[p]rocedural due process claims challenge the constitutionality of procedures used to deprive a person of their life, liberty, or property." The two bedrock elements of any procedural due process violation are (1) a deprivation of a protected interest and (2) insufficient procedural protections surrounding that deprivation. *Tucker v. City of Chicago*, 907 F. 3d 487, 491 (7th Cir. 2018). Procedural due process generally requires that notice be given and an opportunity to be heard afforded before the governmental deprivation of property takes place. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993).

¶ 31    According to Mr. Spiegel, the Village's actions "in seeking to deprive [him] of a property interest that is constitutionally protected, seeking hundreds of thousands in fines, without an opportunity to contest if a violation occurred or the propriety or adequacy of any fine, violates

[his] 14th Amendment procedural due process rights." The circuit court agreed and granted him summary judgment on the counterclaim, but we disagree with that conclusion. In our view, Mr. Spiegel has no cognizable procedural due process claim because he cannot satisfy either of the two elements of such a claim: (1) deprivation or (2) insufficient procedural protections.

¶ 32     In this case, Mr. Spiegel was never actually deprived of anything, a fact which the Village persuasively argues dooms his claim. Citing *DeHart v. Town of Austin*, 39 F.3d 718, 724 (7th Cir. 1994), the Village explains that "[w]hile no person can be deprived of property without due process of law, he first must actually be deprived of that property." While the Village acknowledges that it sought significant fines in its complaint, it recognizes that, until there has been some sort of judicial determination that Mr. Spiegel was in fact violating Village ordinances, it has no right to collect those threatened fines. Here, because such a determination was never made, the Village has not collected a cent from Mr. Spiegel.

¶ 33     The circuit court reasoned that there could be a due process violation here because the Village had alleged that Mr. Spiegel owed fines for the period prior to any hearing on whether he was in compliance with the Village ordinance. The circuit court cited *Village of Hinsdale v. Koplin*, 81 Ill. App. 3d 616 (1980), in support of its ruling. There, the Second District held that "[b]efore one may be held to comply with a stop order based on an alleged violation of a municipal building ordinance there must be a finding in a forum with procedures which provide substantive due process that the order is predicated upon what is, in fact, a violation of the village code." *Id.* at 618. But in this case, in contrast to *Koplin*, no stop order had been entered and indeed the Village took no actions to interfere with Mr. Spiegel's continued use of his building, except for the filing of a complaint, which it only did after Mr. Spiegel failed to come into compliance by the imposed deadline. The filing of a complaint was an appropriate mechanism for seeking a factual

- 9 -

determination as to whether Mr. Spiegel was in compliance with the Village's fire safety ordinance. We are not aware of any law that suggests that, once that factual determination has been made, a party who was not in compliance cannot be fined for the period of noncompliance that preceded the factual finding. Indeed most, if not all, fines are imposed for conduct that occurred prior to the time that the person fined was found to have been in violation. Moreover, even if the law prohibited fines for conduct that occurred before an evidentiary hearing, such a rule would have no application here, where Mr. Spiegel has never paid any fines.

¶ 34 Mr. Spiegel offers no coherent rationale for finding a procedural due process violation. He cites numerous cases and statutes but they seem to have no application to this case. He cites section 1-2.1-4(b)(5) of the Illinois Municipal Code (65 ILCS 5/1-2.1-4(b)(5) (West 2022)), which prohibits *administrative hearing officers* from imposing penalties or fines exceeding $50,000. But that statute does not even apply here, where the Village sought to enforce its ordinance through filing a violation action in the circuit court, which it later abandoned in favor of a declaratory suit, also in the circuit court.

¶ 35 Mr. Spiegel also cites *Solid State Circuits v. United States Environmental Protection Agency*, 812 F.2d 383, 388 (8th Cir. 1987), for the proposition that the Village cannot "threaten ruinous fine to deter challenge." He argues that "a 'meaningful opportunity' to challenge the validity requires a party be able to do so 'without incurring the prospect of debilitating or confiscatory penalties.' " *Id.* In *Solid State Circuits*, two manufacturers challenged a provision of the Comprehensive Environmental Response, Compensation, and Liability Act, which permits the federal government to seek punitive damages where a "person who is liable for a release or threat of release of a hazardous substance fails without sufficient cause to properly provide removal or remedial action upon order of the President *** ." 42 U.S.C. § 9607(c)(3).

¶ 36    The manufacturers argued the provision violated their procedural due process rights because it allowed the EPA to impose potentially devastating penalties based on the failure to comply with a clean-up order that the statute provided no pre-enforcement mechanism to challenge. According to the manufacturers, the issuance of a clean-up order thus placed businesses "between a rock and a hard place," because they could either comply and bear the costs of a clean-up even if they had a valid defense to liability, or they could refuse to comply, which would leave them exposed to the possibility of treble liability. *Solid State Circuits*, 812 F. 2d 383 at 388. The Eighth Circuit held that under the statutory scheme, the EPA is presumed to have acted correctly when it makes the consequential decision to issue a clean-up order, but that "treble damages may not be assessed if the party opposing such damages had an objectively reasonable basis for believing that the EPA's order was either invalid or inapplicable to it." *Id.* at 391.

¶ 37    The holding of *Solid State Circuits* does not support Mr. Spiegel's due process claim. The fines sought by the Village were not punitive in nature. Also, in contrast to the manufacturers subject to the EPA clean-up order, Mr. Spiegel had ample opportunity for a hearing in which he could show that the Village ordinance did not apply to him prior to incurring any liability at all.

¶ 38    Mr. Spiegel also cites *Oklahoma v. Love*, 252 U.S. 331, 336 (1920). The plaintiffs in *Love* were challenging the validity of a rate-setting statute that offered no opportunities for judicial review of proposed rates. *Id.* The only way one could mount a challenge to proposed rates was to violate the statute and be held in contempt, an act which subjected violators to expensive penalties that were "so heavy as to prohibit resort to that remedy." *Id.* at 333.

¶ 39    That case has nothing to do with this one. Mr. Spiegel is not presenting a facial challenge to the constitutionality of the Village's fire safety ordinances; rather, he is challenging the Village's attempt to enforce those ordinances against him. Moreover, no penalty has been imposed on Mr.

Spiegel and the Village agrees that no penalties can be imposed without first giving Mr. Spiegel a hearing to contest whether he violated the ordinance.

¶ 40    In sum, there simply was no procedural due process violation in this case, and the circuit court erred in granting summary judgment in Mr. Spiegel's favor on the issue. There was neither a deprivation of his property, as the Village never collected a cent from him, nor were there insufficient procedural protections, as, from the moment he was first cited by Village authorities, Mr. Spiegel was able to contest the Village's claim that he was in violation of fire regulations. We reverse the circuit court's order granting summary judgment in favor of Mr. Spiegel on his procedural due process counterclaim and find that summary judgment should have been entered in favor of the Village.

¶ 41                    B. Mr. Spiegel's First Amendment Claim

¶ 42    Mr. Spiegel next argues that the circuit court erred in denying his counterclaim that the Village's actions violated his first amendment rights. He appears to be making some sort of argument about retaliation, but he fails to flesh it out in any workable detail. The section of his brief urging us to reverse the circuit court's ruling on this issue consists of three paragraphs of decontextualized quotes from prior state and federal decisions expressing general principles of law, without any citations to the record or connection to what occurred in this case. In its reply brief, the Village argues that because Mr. Spiegel presented no cognizable argument in support of his first amendment claim, we should consider it forfeited under Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). We agree.

¶ 43    While we typically endeavor to make sense of the appellate briefs before us, sometimes the arguments contained therein are simply indecipherable and we are left with no choice but to consider an issue functionally forfeited. See *Roe v. Jewish Children's Bureau of Chicago*, 339 Ill.

App. 3d 119, 125 (2003) ("[t]he failure to comply with Supreme Court Rule 341 and provide the court with a coherent argument supported by citations to the record and relevant authority [forfeits] an issue on appeal"). As we have stated on numerous occasions, this court is "entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research." *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). Further, "[c]itations to authority that set forth only general propositions of law and do not address the issues presented do not constitute relevant authority for the purposes of Rule 341(h)(7)." *Robinson v. Point One Toyota, Evanston*, 2012 IL App (1st) 111889, ¶ 54. As we are unable to discern what, if anything, underlies Mr. Spiegel's first amendment claim, we consider the claim forfeited and affirm the circuit court's ruling denying summary judgment to Mr. Spiegel, and granting it in favor of the Village.

¶ 44                    C. Mr. Spiegel's Substantive Due Process Claim

¶ 45    Substantive due process bars the government from arbitrarily exercising its power without the reasonable justification of serving a legitimate interest. *People v. Pollard*, 2016 IL App (5th) 130514, ¶ 31. It "protects certain fundamental rights that are deeply rooted in our nation's history and traditions." *In re Amanda D.*, 349 Ill. App. 3d 941, 946 (2004). Mr. Spiegel alleges that the Village is violating his substantive due process rights because it is depriving him of his "right to petition the courts," and thus the circuit court erred in awarding summary judgment in favor of the Village on the issue.

¶ 46    For reasons already spelled out above in our discussion of his procedural due process claim (*supra*, ¶¶ 29-39), this argument lacks merit. Mr. Spiegel has been actively litigating this case for over seven years, and he has been doing so in the venue of his choosing. We cannot view this, in any sense, as the Village depriving Mr. Spiegel of his "right to petition the courts." We affirm the

circuit court's ruling denying summary judgment to Mr. Spiegel, and granting it in favor of the Village, on Mr. Spiegel's substantive due process counterclaim.

¶ 47                          D. Mr. Spiegel's Excessive Fines Claim

¶ 48    Mr. Spiegel next argues the circuit court erred in granting the Village summary judgment on his counterclaim alleging excessive fines in violation of the eighth amendment because the Village's threatened fine "not only reveals improper animus and retaliation, but its size is Constitutionally prohibited."

¶ 49    We find this argument unpersuasive for several reasons. First, while it is true that the Village's complaint included a demand for $283,500 in fines, the demand itself had no legal effect. Until Mr. Spiegel's liability has been adjudicated—which has not and will never occur—the Village is not entitled to any money, much less a six-figure fine. Thus, any discussion of whether these fines are "unconstitutionally excessive" is purely academic.

¶ 50    Additionally, while Mr. Spiegel repeatedly refers to the fines sought by the Village as an "absurdity," the Village explains that its code plainly allows for fines of up to $750 per day for ordinance violations, which, as the Village explains, would have resulted in the figure demanded for the period that Mr. Spiegel was alleged to have been out of compliance before its complaint was filed.

¶ 51    Further, Mr. Spiegel cites no authority prohibiting the imposition of fines of a certain size. On this point, the few cases he cites are either irrelevant or they actually undermine his argument. For example, he relies on *City of Chicago v. Kutil*, 43 Ill. App. 3d 826, 829 (1976), in support of the proposition that the Village "cannot *** 'retroactively' apply all Life Safety Code provisions and claim a fine for each day of noncompliance." But that is plainly not what *Kutil* held.

¶ 52    In *Kutil*, the plaintiffs challenged the City's efforts to apply fire safety ordinances to non-

- 14 -

conforming pre-existing properties. The plaintiffs alleged that such application would lead to property owners suffering "unreasonable exactions as compared with the resulting public benefits." *Id.* at 828. We held that retroactive application in this context *was* justified, reiterating our supreme court's position that where fire safety is concerned, " '[t]he public has a right to the safest method of protection from fire which can be found and a municipality has the duty to provide such protection.' " *Id.* at 829 (quoting *Kaukas v. City of Chicago*, 27 Ill. 2d 197, 201 (1963)). We also noted that "the power of municipal government to promote public health and safety by requiring modification of buildings which predated, even by many years, a corrective ordinance has been long and solidly established in this state" and concluded that "in view of ever-present menace of fire," courts should tread lightly in eroding the power of municipalities from pursuing retroactive enforcement, even if such enforcement proves costly for property owners. *Id.* at 828, 830.

¶ 53    We affirm the circuit court's ruling denying summary judgment to Mr. Spiegel, and awarding it to the Village, on Mr. Spiegel's eighth amendment counterclaim.

¶ 54                              E. Mr. Spiegel's Equal Protection Claim

¶ 55    Finally, Mr. Spiegel argues that the circuit court erred in rejecting his claim that the Village's "retaliation and attempt to deprive [him] of 'access to judicial processes' with its enormous fines and assessment" raised equal protection concerns.

¶ 56    The guarantee of equal protection "requires the government to treat similarly situated individuals in a similar manner." *Illinois Collaboration on Youth v. Dimas*, 2017 IL App (1st) 162471, ¶ 79; see also *American Federation of State, County, Municipal Employees, Council 31 v. State, Department of Central Management Services*, 2015 IL App (1st) 133454, ¶ 30 (explaining that "[w]hile the United States and the Illinois Constitutions contain separate equal protection

provisions [citations], the Illinois Supreme Court has chosen to apply the same analysis to Illinois equal protection claims that is used by federal courts to assess federal equal protection claims."). Where, as here, "neither a fundamental right nor a suspect class is at issue, the deferential rational basis test applies." *Dimas*, 2017 IL App (1st) 162471, ¶ 79. Thus, for Mr. Spiegel to prevail on his equal protection claim, he would have to show that the Village "intentionally treated [him] differently from others similarly situated *and* that there is no rational basis for the difference in treatment." (Emphasis added.) *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

¶ 57     Applying that deferential test here, we reject Mr. Spiegel's equal protection claim for the same reasons the circuit court did: he has failed to provide any evidence that he was treated differently than other property owners. To the contrary, as the circuit court noted, the Village identified several different properties which were similarly cited for being out of compliance with various provisions of the Life Safety Code. While Mr. Spiegel frequently refers to the "absurdity" of a $283,500 fine, the size of that fine can be explained by a simple math equation: $750 per day multiplied by all the days Mr. Spiegel was not in compliance prior to the Village filing its declaratory suit. The size of the threatened fine itself is not evidence that he was treated differently than any other suspected violator. Moreover, as noted repeatedly above, no fine was ever collected.

¶ 58     We affirm the circuit court's ruling denying summary judgment to Mr. Spiegel and granting it in favor of the Village on Mr. Spiegel's equal protection counterclaim.

¶ 59                                F. Attorney Fees

¶ 60     The last issue to resolve is the June 9, 2021, order awarding Mr. Spiegel $15,000 in attorney fees. Both parties appealed the order.

¶ 61     Mr. Spiegel's petition for attorney fees was brought pursuant to 42 U.S.C. § 1988 whose purpose, as he cited in his petition, "is to ensure effective access to the judicial process for persons

- 16 -

with civil rights claims and to encourage litigation to enforce the provisions of the Civil Rights Act and the Constitution." *Blount v. Stroud*, 395 Ill. App. 3d 8, 28 (2009). To recover attorney fees under section 1988(b), a plaintiff must be a "prevailing party" in an action or proceeding seeking to enforce a provision of certain federal civil rights laws listed in the statute. 42 U.S.C. § 1988(b). Included in that list is section 1983 (42 U.S.C. § 1983), which Mr. Spiegel relied on to assert his counterclaims in this litigation. As we explained recently in *Snow v. Chicago Transit Authority*, 2022 IL App (1st) 201217, ¶ 71, to qualify as a prevailing party in this context requires a plaintiff to, "[a]t a minimum," demonstrate "the resolution of a dispute that changes the legal relationship between the parties—some relief on the merits of his or her claim." (Citing *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980)).

¶ 62     Mr. Spiegel argues that he is entitled to attorney fees because he "was [the] prevailing party on [the] procedural due process count." Mr. Spiegel asserts the circuit court abused its discretion in awarding him only $15,000, claiming he was entitled to a substantially larger award. The Village argues that Mr. Spiegel was not entitled to any attorney fees. We agree with the Village.

¶ 63     As we have reversed the circuit court's ruling that the Village deprived Mr. Spiegel of his procedural due process rights and concluded that the Village is entitled to summary judgment as a matter of law on all five of Mr. Spiegel's counterclaims, Mr. Spiegel can no longer describe himself as a "prevailing party" on his procedural due process counterclaim. Any argument he may have once had to recuperating attorney fees has evaporated. We therefore vacate the circuit court order awarding him $15,000 in attorney fees.

¶ 64                          IV. CONCLUSION

¶ 65     For the reasons set forth above, we (1) reverse the circuit court's award of summary judgment in favor of Mr. Spiegel on Count IV of his counterclaim, alleging a procedural due

process violation, (2) affirm the circuit court's award of summary judgment in favor of the Village on the remaining counts of Mr. Spiegel's counterclaim, and (3) vacate the circuit court's order awarding Mr. Spiegel $15,000 in attorney fees. We remand to the circuit court to enter summary judgment against Mr. Spiegel and in favor of the Village on the issue of procedural due process.

¶ 66    Affirmed in part, reversed in part, vacated in part, and remanded with instructions.