In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-3196

JASON J. KILBORN,

*Plaintiff-Appellant,*

*v.*

MICHAEL AMIRIDIS, *et al.,*

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 22 C 475 — **Sara L. Ellis**, *Judge.*

_____

On Petition for Rehearing and Rehearing En Banc

_____

DECIDED MAY 2, 2025

_____

Before ROVNER, HAMILTON, and KIRSCH, *Circuit Judges.*

Appellees filed a petition for rehearing en banc. All members of the panel have voted to deny the petition for rehearing,

and none of the judges* in active service has called for a vote on the petition for rehearing en banc, which is denied.

---

* Circuit Judge John Z. Lee did not participate in the consideration or the decision of this matter.

Statement of *Circuit Judge* EASTERBROOK concerning the petition for rehearing en banc. "It is the business of a university to provide that atmosphere which is most conducive to speculation, experiment and creation. It is an atmosphere in which there prevail the four essential freedoms of a university—to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study." *Sweezy v. New Hampshire*, 354 U.S. 234, 263 (1957) (Frankfurter & Harlan, JJ., concurring) (quoting from an academic report) (cleaned up). *Sweezy* introduced the idea of academic freedom to the pages of the United States Reports. Although a majority did not state clearly who possesses that freedom, the views of Justices Frankfurter and Harlan have persuaded many other federal judges that the university itself is entitled to freedom from outside control, even if a faculty member seeks to enlist the aid of non-academic governmental actors. See, e.g., *Webb v. Ball State University*, 167 F.3d 1146 (7th Cir. 1999); *Wozniak v. Adesida*, 932 F.3d 1008 (7th Cir. 2019); *Urofsky v. Gilmore*, 216 F.3d 401, 412–13 (4th Cir. 2000) (en banc).

A university's ability to evaluate and respond to faculty members' speech is essential to the educational enterprise. Think of tenure: A university assesses a professor's quality of research and writing (and choice of subject matter) and necessarily makes decisions based on the content and viewpoint of speech. A chemist who writes excellent political commentary but neglects scientific data and analysis can't expect tenure. A biologist who devotes his career to elaborating the ideas of T.D. Lysenko can't expect tenure. Think of teaching: Every university assigns subjects (a professor of philology can't insist on teaching political theory) and approaches (a professor of evolutionary biology who has experienced a

religious conversion can't denounce Darwin and embrace creationism). A university may demand that exams cover given topics and be graded on a curve. Successful professors receive raises and timeservers do not—though "success" depends on speech that occurs in class and in scholarly journals. And so on. Evaluation of every teacher's speech is an essential part of academic administration, and deans rather than jurors should resolve disputes about these matters.

When a federal court announces that interests must be "balanced" under the approach of *Connick v. Myers*, 461 U.S. 138 (1983), and *Pickering v. Board of Education*, 391 U.S. 563 (1968), it has stripped the university of its authority over the curriculum and assigned it to a different institution. But if the university holds the right of academic freedom, it can decide for itself that Economics 101 should emphasize John Maynard Keynes rather than Adam Smith, Milton Friedman, or Karl Marx, no matter what the professor prefers. A required Great Books course may feature *Pride and Prejudice* and *Oblomov* but not *Ulysses*, and the university may sack someone who instead teaches *Dune* and *The Postman Always Rings Twice*, without asking a jury to decide which books would do students the most good.

A university may require professors to avoid cuss words and other derogatory language in class or on exams. But a university could decide not to protect students, in or out of class, from words and ideas that they might find offensive. See University of Chicago, *Report of the Committee on Freedom of Expression* (2015) (the "Chicago Principles"). The University of Illinois Chicago evidently does not follow the Chicago Principles, and I do not think that a jury should be allowed to determine (by "balancing interests") that it must. Universities

need to experiment and compete on this dimension, as on many others, to find for themselves the best mix of policies—and students must be allowed to choose the educational setting that best matches their needs, something made impossible if the Constitution requires all educational institutions to follow identical paths.

If a governmental body outside a university demands, say, that a professor embrace or denounce diversity, equity, and inclusion, the professor has a substantial claim against that unit of government under the First Amendment. Likewise when a scholar speaks outside of class: A professor of medicine may proclaim on YouTube that vaccines cause autism. But when a professor and a university are at loggerheads about what constitutes effective teaching and scholarship, the university has to win. Otherwise the Judicial Branch and the populace at large (through juries) displace academic freedom.

Instead of invoking the First Amendment to protect him or his university from meddling by actors outside the academy, Kilborn has asked such actors (in the persons of judges and juries) to override a university's judgment about how to conduct classes and set examinations. This university may have reacted unwisely to Kilborn's choice of language, and the resulting student protests, but protecting a university's right to decide independently is the goal of academic freedom.

Oddly, however, the University of Illinois Chicago does not advance an argument along these lines. The panel observed (131 F.4th 550, 561): "The University officials do not suggest that the University had its own competing academic freedom interests." Having litigated this case on the assumption that Kilborn holds rights in speech vis-à-vis his employer,

the University has been reduced to making arguments about just which decisions do, or do not, "clearly establish" what I take to be a nonexistent constitutional right of professors to use offensive words in class or on exams even though the university insists on bland language. These arguments do not justify a hearing en banc. Other arguments that the University could have made are profoundly important, however, and should be entertained when properly presented.